# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, *et al.*, | § § § |
| *Plaintiffs*, | § § |
| v. | § Civil Action No. 4:21-CV-00987 § Judge Mazzant |
| REATA PHARMACEUTICALS, INC., J. WARREN HUFF, MANMEET S. SONI, and COLIN J. MEYER, | § § § § § |
| *Defendants*. | § § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the following competing motions for appointment as lead plaintiff:

(1) Motion of Donald Potts ("Potts") as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel (Dkt. #19).

(2) Motion of UMC Benefit Board, Inc.; US Equity Fund-P Series, a series of the Wespath Funds Trust; US Equity Index Fund-P Series, a series of the Wespath Funds Trust; Wespath Institutional Investments LLC; US Equity Fund-I Series, a series of the Wespath Funds Trust; and US Equity Index Fund-I Series, a series of the Wespath Funds Trust (collectively, "Wespath") as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel (Dkt. #20).

(3) Motion of Laborers' District Council; Contractors' Pension Funds of Ohio; International Union of Operating Engineers, Local No. 793; Members Pension Benefit Trust of Ontario; and IBEW Local 353 Pension Plan (collectively, the "Labor Funds") as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel (Dkt. #21).

(4) Motion of Duane Olcsvary ("Olcsvary") as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel (Dkt. #22).

Having reviewed the motions and responses, the Court finds that Wespath's motion (Dkt. #20) should be **GRANTED**, and the remaining motions (Dkts. #19, #21, #22) should be **DENIED**.

**BACKGROUND**

On March 1, 2021, Defendant Reata Pharmaceuticals, Inc. ("Reata") announced that it had submitted a New Drug Application to the U.S. Food and Drug Administration ("FDA") for bardoxolone methyl ("bardoxolone"). If approved, bardoxolone would become "the first therapy specifically indicated for treatment of [chronic kidney disease] caused by Alport's syndrome" (Dkt. #1 at ¶ 25). But on December 8, 2021, the FDA's Advisory Committee unanimously voted against approval of Reata's application.

The denial came as a shock to Reata's investors. Back in November of 2016, "Reata told investors during an earnings conference call that 'we have received clear guidance from [the] FDA about requirements for approval of bardoxolone [ ] in Alport syndrome'" (Dkt. #22, Exhibit 1 at p. 8). Then in November of 2020, Reata announced that the results of a multi-year study on the efficacy of bardoxolone were "positive" and "represent[ed] the first time that an investigational medicine ha[d] shown a significant clinical benefit in [chronic kidney] disease" (Dkt. #1 at ¶ 20). As far as investors were aware, bardoxolone worked—"the data" provided by Reata "suggest[ed] that bardoxolone treatment ha[d] beneficial long-term effects on kidney function in patients with Alport syndrome" (Dkt. #1 at ¶ 26).

The bigger shock, however, was revealed within FDA briefing documents released on December 6, 2021. In stark contrast to Reata's prior representations, investors discovered that the FDA "had repeatedly voiced concerns about the validity of the study design—specifically, that bardoxolone's pharmacodynamic effect on kidney function would make it difficult to assess the effectiveness of the drug" (Dkt. #22, Exhibit 1 at pp. 8–9). As a result, the FDA "did not believe that the data demonstrated that bardoxolone was effective in slowing the loss of kidney function in patients with Alport syndrome or in reducing the risk of progression to kidney failure" (Dkt. #22,

Exhibit 1 at p. 8). The documents further revealed that these concerns were communicated to Reata as early as March 1, 2021. Yet, Reata never attempted to relay these concerns to its investors.

Relying on Reata's representations, investors bought and acquired millions in Reata shares and securities. Wespath "purchased 114,030 Reata shares . . . with a total [ ] expenditure of $17,184,758.77" (Dkt. #20, at p. 12); Potts and the Labor Funds purchased 12,000 and 12,289 shares of Reata common stock, respectively (Dkt. #19 at p. 3; Dkt. #21 at p. 6); and Olcsvary invested thousands in Reata securities (Dkt. #22, Exhibit 1 at p. 12). Reata's initial share price on November 10, 2020 closed at $184.62 per share. But after the FDA released its briefing documents, "Reata's stock price plummeted 37%, falling from $78.69 per share to close at $48.92 per share, on unusually heavy trading volume" (Dkt. #21 at p. 9). Then, when the FDA denied Reata's application, shares fell even further "to close at $29.11 per share—down more than 63% from the opening of trading on December 6, 2021," just 48 hours earlier (Dkt. #21 at p. 9).

As a result, millions invested in Reata was now lost, and the value of Reata's shares mere paperweight in comparison to their once respected high. Wespath's losses alone totaled over $10,279,158.72 (Dkt. #20 at p. 12). The Labor Funds "incurred losses of over $662,000" (Dkt. #21 at p. 6), Potts "over $558,766 in losses" (Dkt. #19 at p. 3), and Olcsvary over "$164,171 . . . on his [ ] transactions in Reata securities" (Dkt. #22, Exhibit 1 at p. 12).

Beginning on December 20, 2021, investors filed several class action lawsuits against Reata; Reata's Chief Executive Officer, J. Warren Huff ("Huff"); Reata's Chief Financial Officer Manmeet S. Soni ("Soni"); and Reata's Chief Medical Officer, President, and Chairman of the Board, Colin J. Meyer ("Meyer"). Upon motion of various plaintiffs, the Court consolidated the lawsuits into the above-captioned matter on April 22, 2022. Plaintiffs collectively allege that all Defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), as

3

amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 10b-5 promulgated thereunder; and that the individual Defendants violated § 20(a) of the Exchange Act. Plaintiffs sue on behalf of all persons and entities that purchased or acquired Reata securities or sold Reata options during the alleged class period. Potts, Olcsvary, and Wespath assert a class period of November 9, 2020 through December 8, 2021, while the Labor Funds assert a class period of November 14, 2016 through December 6, 2021.[1]

On February 18, 2022, Potts (Dkt. #19), Wespath (Dkt. #20), the Labor Funds (Dkt. #21), and Olcsvary (Dkt. #22) each filed separate motions for their appointment as lead plaintiff and approval of lead plaintiff's selection of counsel. On March 4, 2022, both the Labor Funds (Dkt. #28) and Olcsvary (Dkt. #29) filed notices of non-opposition to the appointment of Wespath as lead plaintiff, acknowledging that Wespath holds the largest financial interest in this action. On the same day, Potts filed a response to the various competing motions for appointment of lead plaintiff (Dkt. #30). In his response, Potts acknowledges that Wespath holds the largest financial interest and asks that he be appointed lead plaintiff only in the event "the Court [ ] determine[s] that Wespath is not 'the most adequate plaintiff'" (Dkt. #30 at p. 2). Thus, no movant stands in opposition to the appointment of Wespath as lead plaintiff or the approval of Wespath's selection of lead and liaison counsel. Wespath subsequently filed a reply (Dkt. #32) and a memorandum in support of its appointment (Dkt. #31).

---

[1] While the Court notes the differing class periods, for the purpose of this order, the Court will use the Labor Funds' proposed class period—the longer class period with the earlier start date. In doing so, the Court expresses no opinion as to whether either or both class periods can or will ultimately be approved. The class period will be clearly defined after lead plaintiff and lead counsel are appointed and file a consolidated complaint. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 447–48 n.15 (S.D. Tex. Feb. 15, 2002); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 407 n.1 (S.D. Tex. 2000); *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624 (E.D. Wis. 2009) (collecting cases, and noting that "courts agree that they should not make any binding determinations regarding the proper class period as part of the lead-plaintiff analysis" because § 78u–4(a)(4)(B)(iii)(I)(bb) is assumed to refer to "the broadest, most inclusive potential class"). Furthermore, the Court reserves the right, as it must, to define subclasses to accommodate for the differing class periods, or to choose a class period different from those proffered.

**LEGAL STANDARD**

The PSLRA sets forth the procedure for appointing a lead plaintiff in a private securities class action lawsuit. *See* 15 U.S.C. § 78u–4(a)(3)(B). "The purpose of the PSLRA in selecting a lead plaintiff is 'to have the plaintiff class represented by a member with a substantial financial interest in the recovery as incentive to monitor the litigation to prevent its being lawyer-driven.'" *Plymouth Cty. Ret. Sys. v. Apache Corp.*, No. 4:21-CV-00575, 2021 WL 4726510, at *4 (S.D. Tex. Oct. 6, 2021) (quoting *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411–412 (S.D. Tex. 2000)). The Court, therefore, must select a lead plaintiff who is "an investor capable of understanding and controlling the litigation." *Berger v. Compaq Comput. Corp.*, 279 F.3d 313, 313 (5th Cir. 2001); *see also* 15 U.S.C. § 78u–4(a)(3)(B)(i) (lead plaintiff must be "most capable of adequately representing the interests of class members").

The PSLRA provides a "rebuttable presumption" that the most adequate plaintiff to represent the class as lead plaintiff is "the person or group of persons that: (1) has filed the complaint or made a timely motion in response to a notice; (2) by the Court's determination, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 563–564 (E.D. Tex. 2021) (citing 15 U.S.C. at § 78u–4(a)(3)(B)(iii)(I)). A member of the potential class can rebut the presumption by providing proof that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class" or (2) is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Accordingly, to meet the presumption, a potential lead plaintiff must demonstrate that the PSLRA's procedural requirements have been satisfied. The PSLRA requires each potential lead

plaintiff to "provide a sworn certification, [ ] personally signed by such plaintiff and filed with the complaint." *Id.* at § 78u–4(a)(2)(A). The certification must represent the following: (1) "the plaintiff has reviewed the complaint and authorized its filing;" (2) the plaintiff did not purchase relevant securities in order to participate in the action; (3) "the plaintiff is willing to serve as a [lead] plaintiff on behalf of [the] class;" (4) a statement setting "forth all of the transactions of the plaintiff" in the relevant securities; (5) a statement identifying "any other action under this chapter, filed during the 3-year period preceding" the date of the certification in which the plaintiff has sought to serve as lead plaintiff; and (6) "the plaintiff will not accept any payment for serving" as lead plaintiff "beyond the plaintiff's pro rata share of recovery, except as ordered or approved by the court." *Id.*

The PSLRA further requires that within twenty days of filing the initial action, the plaintiff who filed the action must publish notice to the class in a "widely circulated national business-oriented publication or wire service." *Id.* at § 78u–4(a)(3)(A)(i). The notice should advise putative class members "of the pendency of the action, the nature of the allegations, the purported class period, and their right to seek appointment as lead plaintiff." *Strong v. ArthroCare Corp.*, No. A-08-CA-574, 2008 WL 11334942, at *2 (W.D. Tex. Dec. 10, 2008). Motions for appointment as lead plaintiff must be filed within sixty days of the publication of the notice. 15 U.S.C. § 78u–4(a)(3)(A)(1).

In addition, plaintiffs moving for appointment as lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at § 78u–4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are met:

> (1) The class is so numerous that joinder of all members is impracticable [(i.e., "numerosity")]; (2) there are questions of common law or fact common to the

6

>   class [(i.e., "commonality")]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(i.e., "typicality")]; and, (4) the representative parties will fairly and adequately protect the interests of the class [(i.e., "adequacy")].

FED. R. CIV. P. 23(a). For a lead plaintiff analysis, however, "typicality and adequacy of representation are the only [relevant] provisions." *Abouzied v. Applied Optoelecs., Inc.*, No. 4:17-CV-2399, 2018 WL 539362, at *2 (S.D. Tex. Jan. 22, 2018); *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. Feb. 15, 2002) (explaining that a court's analysis at this stage in determining a lead plaintiff is "not as searching" as the analysis demanded by a motion for class certification); *Holley v. Kitty Hawk*, 200 F.R.D. 275, 281 (S.D. Tex. 2001) ("At this stage in the proceedings, the Court need only consider briefly the adequacy and typicality of the proposed lead plaintiffs, as all the requirements of Rule 23 will be examined in greater detail at the class certification hearing."). The proposed lead plaintiff must put on at least a *prima facie* case that it meets these requirements. *In re Enron*, 206 F.R.D. at 441.

Once the Court selects the lead plaintiff, it may approve the counsel selected and retained by that plaintiff to represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(v). The Court should approve the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." *Id.* at § 78u–4(a)(3)(B)(iii)(II)(aa). "The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy." *In re Enron*, 206 F.R.D. at 441 (citing *Berger*, 257 F.3d at 480–81).

## ANALYSIS

### I.     Appointment of Lead Plaintiff

Though Wespath's appointment as lead plaintiff is unopposed, this Court "has an independent duty to ensure the PSLRA's statutory requirements are met." *Ga. Firefighters'*

7

*Pension Fund v. Anadarko Petroleum Corp.*, No. 4:20-CV-0576, 2020 WL 2475656, at *2 (S.D. Tex. May 13, 2020) (citing *Cambria Cty. Emplys. Ret. Sys. v. Venator Materials PLC*, No. 4:19-CV-3464, 2019 WL 5328877, at *1 (S.D. Tex. Oct. 21, 2019)). Accordingly, the Court will consider the following issues, in turn: (1) whether all potential lead plaintiffs have completed the required certification; (2) whether notice of suit was timely filed; and (3) which plaintiff is the most adequate to serve as lead plaintiff, taking into consideration whether the motions for lead plaintiff were timely filed, the plaintiff with the largest financial interest in the litigation, and whether that plaintiff satisfies Rule 23's typicality and adequacy requirements. 15 U.S.C. at § 78u–4(a)(3)(B)(iii)(I).

### A. Sworn Certifications

The PSLRA requires each potential lead plaintiff to file a certification stating the following:

> [T]he plaintiff has reviewed the complaint and authorized its filing; the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action under the Securities Exchange Act; the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary; a listing of all the transactions of the plaintiff in the security in question during the complaint's class period; a listing of any other actions under the Act in which the plaintiff has sought to serve as lead plaintiff in the last three years; [and] that the plaintiff will not accept any payment for serving as lead plaintiff beyond the plaintiff's pro rata share of any recovery, except as approved by the court in accordance with the provisions of the Act.

*Holley*, 200 F.R.D. at 276–77 (citing 15 U.S.C. § 78u–4(a)(2)(A)). All four proposed lead plaintiffs submitted a certification in compliance with the above provision (*see* Dkt. #19, Exhibit 1; Dkt. #20, Exhibit 2; Dkt. #21, Exhibit 5; Dkt. #24, Exhibit 3). Thus, the Court finds that the PSLRA certification requirement has been met.

The Court will now consider whether the PSLRA's timely notice requirement was satisfied.

8

### B. Timely Notice

Under the PSLRA, the plaintiff who files the initial action must, within twenty days of filing the action, publish notice in a widely-circulated business publication informing putative class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A)(i); *see also In re Kosmos Energy Ltd. Sec. Litig.*, No. 12-CV-373, 2012 WL 6199318, at *1 (N.D. Tex. Nov. 1, 2012) (discussing the lead plaintiff appointment process). This case was initiated on December 20, 2021 (Dkt. #1). That same day, notice was published in *Business Wire*. "*Business Wire* is a business-oriented wire service within the meaning of the PSLRA, and has been recognized as a suitable vehicle for satisfying the notice and publication requirements of the PSLRA." *Netsky v. Capstead Mortg. Corp.*, No. 3:98-CV-1716, 2000 WL 964935, at *1 n.5 (N.D. Tex. July 12, 2000) (collecting cases); *see also Holley*, 200 F.R.D. at 277 (finding *Business Wire* to be "a sufficient form of notice"). Moreover, the notice advised the putative class on all matters required by the PSLRA (*see* Dkt. #10, Exhibit 1 at p. 9).[2] *See* 15 U.S.C. § 78u–4(a)(3)(A)(i). Thus, the Court finds that the PSLRA initial notice requirements were satisfied.

The Court will now determine which movant is the most adequate plaintiff.

### C. The Most Adequate Plaintiff

The PSLRA instructs the Court to select a lead plaintiff who is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the most adequate plaintiff is the person or group of persons that timely filed a motion in response to the published notice of the suit, has the largest financial interest in the relief sought by the class, and otherwise satisfies the requirements of Rule 23. *Id.* at

---

[2] As noted *supra*, the Labor Funds assert a class period of November 14, 2016, through December 6, 2021. Prior to consolidation, the Labor Funds published notice of suit on January 21, 2022 (*see* Dkt. #21 at p. 10). This notice indicated the class period as represented by the Labor Funds. Thus, regardless of which class period is ultimately selected, adequate notice was provided to the putative class.

9

§ 78u–4(a)(3)(B)(iii). Thus, the Court will begin by determining whether all potential lead plaintiffs' motions for appointment were timely filed.

### 1. Timely Filed Lead-Plaintiffs Motions

Under the PSLRA, any person who is a member of the proposed class may apply to be appointed lead plaintiff within sixty days after publication of the notice. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II); *see also Giovagnoli v. GlobalScape, Inc.*, No. SA-17-CV-753, 2017 WL 11220692, at *2 (W.D. Tex. Nov. 6, 2017) (stating "the Court is to consider all timely motions made by purported class members seeking to be appointed lead plaintiff."). "The purpose of this requirement is to ensure that the lead plaintiff is appointed as early as possible, and to expedite the lead plaintiff process." *Shiaqiang Chen v. NQ Mobile*, No. 4:18-CV-00096, 2018 WL 2441589, at *2 (E.D. Tex. May 31, 2018) (citations omitted). Accordingly, the Court is to strictly enforce compliance with the procedural requirements of the PSLRA. *Id*.

Here, as stated, notice in the first-filed case was published on December 20, 2021. As a result, the sixty-day window in which class members could file motions for appointment as lead plaintiff expired on February 18, 2022. All four proposed lead plaintiffs filed for appointment on or before February 18, 2022.[3] Thus, the Court finds that all potential lead plaintiffs timely-filed their motions for appointment in accordance with the PSLRA. *See* 15 U.S.C. § 78u–4(a)(3)(a)(i)(II).

The Court will now assess which potential lead plaintiff has the largest financial interest.

---

[3] Olcsvary initially filed a combined motion for consolidation, appointment as lead plaintiff, and approval of selection of lead counsel on February 18, 2022 (Dkt. #18). Though not required to, Olcsvary chose to re-file his motions individually on February 23, 2022 (*see* Dkts. #22, #23, #24). As a result, Olcsvary's initial motion was terminated, leaving as pending only the individually-filed motions—which were filed after the PSLRA filing deadline. However, the individually-filed motions are substantively identical to the initial combined motion. Further, this technical error "does not implicate concerns animating the PSLRA's [deadline] requirements, such as litigants 'jockeying' for [a] better position." *Patel*, 549 F. Supp. 3d at 564 (quoting *Micholle v. Opthotech Corp.*, No. 17-CV-1758, 2018 WL 1307285, at *7 (S.D.N.Y. Mar. 13, 2018)). Thus, the Court will still consider Olcsvary's motion as timely.

### 2. Largest Financial Interest

"The PSLRA does not delineate a procedure for determining the 'largest financial interest' among the proposed class members." *In re Enron*, 206 F.R.D. at 400. However, courts have considered four factors relevant in determining the largest financial interest: "1) the number of shares purchased; 2) the number of net shares purchased; 3) the total net funds expended by the plaintiff; and 4) the approximate losses suffered by the plaintiff" during the class period. *Ga. Firefighters*, 2020 WL 2475656, at *3 (citing *In re Enron*, 206 F.R.D. at 400); *see also Patel*, 549 F. Supp. 3d at 564–65 (collecting cases). In applying these factors, "[c]ourts have held that the fourth factor, the loss suffered, is the determinative factor in this financial-interest analysis." *Patel*, 549 F. Supp. 3d at 565.

Of the four potential lead plaintiffs, Wespath—indisputably—has the largest financial interest. Wespath purchased 114,030 Reata shares in total, with a net basis of 77,783 shares purchased and a net funds expenditure of $12,412,855.21 during the class period (Dkt. #20 at p. 12). In sum, Wespath suffered approximately $10,279,158.82 in investment losses during the class period.

In comparison, Potts purchased 12,000 shares with a total expenditure exceeding $1,552,700, and claims $558,766 in losses (Dkt. #19 at p. 9). The Labor Funds collectively[4] purchased 12,289 shares, and claim $662,000 in losses (Dkt. #21 at p. 10). Olcsvary invested thousands in Reata securities, and claims $164,171 in losses (Dkt. #22, Exhibit 1 at p. 12). Thus,

---

[4] Potts argues that the entities making up the Labor Funds group "should not be allowed to aggregate their losses under the PSLRA, as it is clear that this group was cobbled together to artificially create the largest financial interest and leapfrog other investors with a larger individual loss, including [ ] Potts" (Dkt. #30 at p. 3). However, aggregating losses for the purpose of appointing a lead plaintiff is generally permissible. *See In re Waste Mgmt.*, 128 F. Supp. 2d at 415 (stating "nearly every court decision interpreting [the PSLRA] [ ] makes clear that because aggregation of losses is allowed, [it is] the group of persons with the largest loss, not the largest individual loser, that is presumptively entitled to appointment as lead plaintiff."). Regardless, the Court need not decide whether aggregation of the Labor Funds' losses is appropriate at this stage as even when aggregated, the Labor Funds' financial interest is substantially smaller than that of Wespath.

11

while the losses of the other potential lead plaintiffs are substantial, they are but a mere fraction of Wespath's claimed losses—losses that are more than fifteen times as large as that of the next largest movant. To be sure, Potts, the Labor Funds, and Olcsvary have all acknowledged that Wespath has the largest financial interest of any potential lead plaintiff that has moved for appointment (*see* Dkt. #30 at p. 2; Dkt. #28 at p. 2; Dkt. #29 at p. 3).

The Court finds, therefore, that Wespath is the potential lead plaintiff with the largest financial interest. The Court will now determine whether Wespath satisfies Rule 23's typicality and adequacy requirements.

### 3. Typicality and Adequacy Requirements

In addition to carrying the largest financial interest, the PSLRA requires that a presumptive lead plaintiff satisfy the typicality and adequacy requirements of Rule 23(a). 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). "[T]o satisfy the Rule 23 requirements under the PSLRA, a lead plaintiff must have claims or defenses that are 'typical of the claims or defenses of the class,' and the lead plaintiff must 'fairly and adequately protect the interests of the class.'" *Patel*, 549 F. Supp. 3d at 565 (citing FED. R. CIV. P. 23(a)). While a potential lead plaintiff "bears the burden of affirmatively proving it satisfie[s] the requirements of Rule 23," *In re Enron*, 206 F.R.D. at 441, the plaintiff is not required to "submit evidentiary proof" at this stage. *In re BP*, 758 F. Supp. 2d at 435 (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). The Court will begin by assessing whether Wespath meets Rule 23's typicality requirement.

#### i. Typicality

Typicality requires that "[t]he claims of the lead plaintiffs [ ] be typical of the claims of the class." *Holley*, 200 F.R.D. at 281. To be typical of the class, the lead plaintiffs' claims must arise "from the same event or course of conduct that gives rise to claims of other class members and the

claims are based on the same legal theory." *Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988). Thus, the critical inquiry is whether the lead plaintiff's claims "have the same essential characteristics as those of the putative class," such that the incentives of the lead plaintiff are aligned with those of the class. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Here, Wespath's claims are typical of the claims of the class as they arise from the same course of events and rely on the same legal arguments to prove Defendants' liability. Indeed, like all class members, Wespath alleges that, in violation of federal securities laws, Defendants mispresented and concealed from investors that the FDA had repeatedly voiced concerns about the efficacy of bardoxolone as a treatment for chronic kidney disease caused by Alport syndrome. Similarly, like all class members, Wespath relied on Defendants' alleged misrepresentations to purchase Reata securities at prices artificially inflated by those misrepresentations and was damaged as a result. *See Parker v. Hyperdynamics Corp.*, No. 12-CV-999, 2013 WL 623164, at *3 (S.D. Tex. Feb. 19, 2013) (finding movant easily demonstrated typicality where movant's damages in form of lost investments were allegedly caused by buying company stock during the class period at prices artificially inflated by company's misrepresentations); *Netsky*, 2000 WL 964935, at *6 (same).

Further, the Court is aware of no differences that would substantially alter the proof needed for any potential class members' claims. As noted *supra*, Wespath does allege a class period different from at least one other group of class members, the Labor Funds. However, "that fact alone does not make [Wespath] atypical or inadequate because all members of the class have the same or similar injury based on the same course of conduct by Defendants." *In re Waste Mgmt.*, 128 F. Supp. 2d at 421; *see also Strong*, 2008 WL 11334942, at *7 (finding that differing class periods did not defeat typicality where no party asserted that there was a significant difference in

proof required to prove the proposed lead plaintiff's claims versus the class's claims). In the absence of such evidence, the nature of Wespath's financial interest in this action and claims against Defendants suggest that the incentives of Wespath "are aligned with those of the class." *Patel*, 549 F. Supp. 3d at 569. The Court finds, therefore, that Wespath satisfies Rule 23's typicality requirement.

The Court will now assess whether Wespath meets Rule 23's adequacy requirement.

### ii. Adequacy

Adequacy requires that "the lead plaintiff group [ ] fairly and adequately protect the interests of the class." *Holley*, 200 F.R.D. at 281. Adequacy "serves to uncover conflicts of interest between the named plaintiff and the class they seek to represent." *Anchem Prods. v. Windsor*, 521 U.S. 491, 625 (1997). In determining adequacy, the Court must consider (1) "the zeal and competence of the [lead plaintiff's] counsel and (2) the willingness and ability of the [lead plaintiff] to take an active role in and control the litigation and to protect the interests of absentees." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) (quoting *Berger*, 257 F.3d at 479); *see also Patel*, 549 F. Supp. 3d at 566 (a lead plaintiff is adequate when they are "prepared to prosecute the action vigorously, and when no conflicts exist between the named plaintiffs' interests and the class members' interests"). Additionally, the PSLRA "requires that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation." *Berger*, 257 F.3d at 483 (5th Cir. 2015).

Here, the Court is satisfied that Wespath will fairly and adequately protect the interests of the class. First, Wespath is an institutional investor—the PSLRA's preferred-type of lead plaintiff. In drafting the PSLRA, Congress expressed a desire to "increas[e] the role of institutional investors in class actions" as this would "ultimately benefit shareholders and assist courts by improving the

14

quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34, *as reprinted in* 1995 U.S.C.C.A.N. at 733; *see also In re BP*, 758 F. Supp. 2d at 439 (stating "the PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs"); *In re Kosmos Energy*, 2012 WL 6199318, at *2 n.2 (citation omitted) (noting that "through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"). Indeed, "[l]arge institutional investors . . . tend to be sophisticated investors capable of controlling attorneys in securities fraud litigation, and the [PSLRA], by emphasizing financial stake, expresses a preference for appointing such investors." *In re Reliant Sec. Litig.*, No. 02-1810, 2002 U.S. Dist. LEXIS 2777, at *9–10 (S.D. Tex. Aug. 27, 2002); *see also In re Cendant Corp.*, 264 F.3d at 264 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake").

As indicated by its motion, Wespath is an institutional investor in that it "consists of funds or entities" that "supervise[] and administer[] retirement plans, investment funds, and health and welfare benefit plans for active and retired clergy and lay employees of the United Methodist Church" (Dkt. #20 at p. 15), and has a significant financial interest in the litigation. This provides Wespath with an incentive to vigorously represent the claims of the class. *Gluck*, 976 F. Supp. at 546. Thus, Wespath's interests are clearly aligned with those of the potential class and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Wespath and other class members. To the contrary, Wespath has retained competent and experienced counsel to represent the class, and has also expressed through its PSLRA certification a strong desire and willingness to serve as lead plaintiff (Dkt. #20, Exhibit 1).

The Court finds, therefore, that Wespath satisfies Rule 23's adequacy requirement. In sum, Wespath filed a timely motion to be appointed lead plaintiff, is the movant with the largest financial interest in the case, and satisfies the typicality and adequacy requirements of Rule 23. Thus, Wespath has satisfied all requirements necessary to show it is the most adequate plaintiff and thus the presumptive lead plaintiff under the PSLRA. Unless the presumption is rebutted, the presumption will stand.

### D. Rebuttal of the Presumption

A member of the potential class can rebut the presumption by providing proof that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class" or (2) is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). "If the challenging member of the purported class can demonstrate a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class, then discovery on the issue may be conducted before the Court appoints a Lead Plaintiff." *Gluck*, 976 F. Supp. at 547 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iv)).

Here, all remaining potential lead plaintiffs—Potts, the Labor Funds, and Olcsvary—stand unopposed to Wespath's appointment as lead plaintiff, and offer no argument or evidence to rebut the presumption. Further, no other potential class members have attempted to rebut the presumption. Thus, the presumption stands and the Court approves Wespath's appointment as lead plaintiff.

## II. Approval of Selection of Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). In

reviewing the lead plaintiff's selection of counsel, "[t]he court should not disturb the lead plaintiff's choice" unless necessary to "protect the interests of the class." *In re Enron*, 206 F.R.D. at 441. That said, the adequacy of "plaintiff's counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy." *Id.*

Here, Wespath seeks to appoint two law firms as counsel: Kirby McInerney LLP ("Kirby McInerney") as Lead Counsel for the class, and Steckler Wayne Cochran Cherry PLLC ("SWCC") as Local Liaison Counsel for the class. The Court has reviewed the background and experience of each firm and is satisfied that Kirby McInerney and SWCC could adequately represent the plaintiff class in this action. Both law firms have substantial experience in securities class action lawsuits and possess the resources necessary to pursue this action. Further, the record shows no basis to infer that Kirby McInerney or SWCC will not adequately represent the putative class. Therefore, the Court approves Wespath's selection of Kirby McInerney as Lead Counsel and SWCC as Local Liaison Counsel.

## CONCLUSION

It is **ORDERED** that Plaintiff Wespath's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Dkt. #20) is **GRANTED**. Therefore, Wespath is appointed as Lead Plaintiff, Kirby McInerney LLP is appointed as Lead Counsel, and Steckler Wayne Cochran Cherry PLLC is appointed as Local Liaison Counsel.

It is further **ORDERED** that Plaintiff Donald Potts' Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Dkt. #19), Plaintiff the Labor Funds' Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Dkt. #21), and Plaintiff Duane Olcsvary's Motion for Appointment as Lead Plaintiff and Approval of Selection of

Counsel (Dkt. #22) are hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 22nd day of April, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE