**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>REATA PHARMACEUTICALS, INC., *et al.*<br><br>        Defendants. | Case No. 4:21-cv-00987-ALM<br>LEAD<br><br><u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING THE PROPOSED CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS <u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................... 6

    I.      Standards Governing Approval of Class Action Settlements ............................... 6

          A.      The Settlement Is the Result of Thorough and Arm's Length Efforts by Adequate Representatives ................................................................... 8

          B.      The Relief Provided by the Settlement Is Adequate and Reasonable ..... 10

          C.      The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or Any Segment of the Settlement Class .................................................................. 13

          D.      The Proposed Attorneys' Fee Request Is Reasonable ........................... 15

          E.      Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement ................................................................................ 16

    II.      The Proposed Settlement Class Should Be Certified for Settlement Purposes .. 17

          A.      The Settlement Class Satisfies Rule 23(a)'s Requirements ................... 18

                1.      The Class Is So Numerous that Joinder Is Impracticable .......... 18

                2.      There Are Common Questions of Law or Fact .......................... 19

                 3.      Lead Plaintiff's Claims Are Typical ......................................... 20

                 4.      Lead Plaintiff and Lead Counsel Are Adequate Representatives ........................................................................... 20

          B.      The Settlement Class Satisfies Rule 23(b)(3)'s Requirements ............... 21

                1.      Common Questions of Law or Fact Predominate ...................... 21

                2.      A Class Action is the Superior Method of Adjudication ............ 22

    III.      The Proposed Notice Plan and Forms Should Be Approved ............................. 22

    IV.      Proposed Schedule of Settlement-Related Events ............................................ 24

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)..................................................................................................... 22

*Amchem Prods., Inc.  v.  Windsor*,
    521  U.S.  591 (1997) ................................................................................... 17, 18, 20, 21

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)..................................................................................................... 22

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................................... 22

*Billitteri v. Secs. Am., Inc.*,
    No. 10 ML 2145, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)........................................... 9, 10

*Carroll v. SGS Auto. Servs., Inc.*,
    No. 16 Civ. 537, 2021 WL 2550278 (M.D. La. June 22, 2021) ............................................... 18

*Celeste Neely,*
    Nos. 4:21 Civ. 307, 4:21 Civ. 347, 2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) .................. 12, 16

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. 12 Civ. 1609, 2015 WL 965693 (W.D. La. Mar. 3, 2015) ................................................. 10

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
    No. 15 Civ. 374, 2018 WL 1558571 (W.D. Tex. Mar. 29, 2018)............................................... 20

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 6, 10

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ...................................................................................... 10

*Del Carmen v. R.A. Rogers, Inc.*,
    No. 16 Civ. 971, 2018 WL 4701824 (W.D. Tex. Apr. 25, 2018)............................................. 6

*Erica P. John Fund, Inc. v. Haliburton Co.*,
    563 U.S. 804 (2011)..................................................................................................... 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02 Civ. 1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)......................................... 16

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ......................................................................................... 21

*Frey v. First Nat. Bank Sw.*,
   602 F. App'x 164 (5th Cir. 2015) ................................................................. 18

*Hefler v. Wells Fargo & Co.*,
   No. 16 Civ. 5479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................... 16

*In re Bayou Sorrel Class Action,*
   No. 04 Civ. 1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ........................................... 16

*In re Cobalt Int'l Energy, Inc. Secs. Litig.*,
   No. 14 Civ. 3428, 2017 WL 2608243 (S.D. Tex. June 15, 2017) ............................... 19, 20, 21

*In re Dell Inc.*, *Secs. Litig.*,
   No. 06 Civ. 726, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ...................................... 13, 15

*In re Dynegy, Inc. Secs. Litig.*,
   226 F.R.D. 263 (E.D. Tex. 2005) ................................................................. 19

*In re Elec. Data Sys. Corp. Secs. Litig.*,
   226 F.R.D. 559 (E.D. Tex. 2005) ............................................................... 21, 22

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
   No. 01 Civ. 3624, 2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) ........................................... 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................ 6

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..................................................... 8, 11

*In re IMAX Secs. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................. 17

*In re Lease Oil Antitrust Litig. (No. II)*,
   186 F.R.D. 403 (S.D. Tex. 1999) .................................................................. 8

*In re Mannkind Corp. Secs. Litig.*,
   No. 11 Civ. 929, 2012 WL 13008151 (C.D. Cal. Dec. 21, 2012) ........................................ 9

*In re OCA, Inc. Secs. & Derivative Litig.*,
   No. 05 Civ. 2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ................................ 7, 15, 24

*In re OCA, Inc. Secs. & Derivative Litig.*,
   No. 05 Civ. 2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ............................................ 15

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013) .................................................................. 18

iii

*In re Waste Mgmt., Inc. Secs. Litig.*,
No. 99 Civ. 2183, 2002 WL 35644013 (S.D. Tex. May 10, 2002) .......................................... 15

*Jones v. Singing River Health Sys.*,
No. 14 Civ. 447, 2016 WL 6106518 (S.D. Miss. Jan. 20, 2016) ................................................ 7

*KB Partners I, L.P. v. Barbier*,
No. 11 Civ. 1034, 2013 WL 2443217 (W.D. Tex. June 4, 2013) .............................................. 20

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................................................... 13

*Lehocky v. Tidel Techs., Inc.*,
220 F.R.D. 491 (S.D. Tex. 2004) ............................................................................................... 9

*Marcus v. J.C. Penney Co., Inc.*,
No 6:13 Civ. 736, 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ....................................... 19, 20

*Marro v. N.Y. State Teachers' Ret. Sys.*,
No. 16 Civ. 1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ............................................... 16

*McNamara v. Bre-X Minerals Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002) ............................................................................................... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ................................................................................................................ 23

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ................................................................................................... 19

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) .......................................................................................... 16

*Netsky v. Capstead Mortg. Corp.*,
2000 WL 964935 (N.D. Tex. July 12, 2000) ........................................................................... 20

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ..................................................................................................... 7

*Rensel v. Centra Tech., Inc.*,
2 F.4th 1359 (11th Cir. 2021) .................................................................................................. 18

*Rougier v. Applied Optoelectronics, Inc.*,
No. 4:17 Civ. 02399, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ....................................... 19

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2015) ........................................................................... 24

iv

*Slipchenko v. Brunel Energy, Inc.*,
   No. 11 Civ. 1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ................................................ 11

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ..................................................................................... 13

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
   No. 19 Civ. 1227, 2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ................................................ 18

**Statutes**

15 U.S.C. § 78u-4(a)(4) .......................................................................................... 13

15 U.S.C. § 78u-4(a)(7) .......................................................................................... 24

15 U.S.C. § 78u-4(e) ............................................................................................. 14

28 U.S.C. § 1715 .................................................................................................. 23

**Other Authorities**

Newberg & Rubenstein on Class Actions (5th ed. 2016) ................................................. 6

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Lead Plaintiff UMC Benefit Board, Inc., US Equity Fund-P Series, a series of the Wespath Funds Trust, US Equity Index Fund-P Series, a series of the Wespath Funds Trust, Wespath Institutional Investments LLC, US Equity Fund-I Series, a series of the Wespath Funds Trust, and US Equity Index Fund-I Series, a series of the Wespath Funds Trust ("Lead Plaintiff" or "Wespath"), on behalf of itself and all other Settlement Class Members, respectfully submits this unopposed motion, pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is filed herewith.[1]

## PRELIMINARY STATEMENT

Lead Plaintiff has reached an agreement to resolve the above-captioned action (the "Action"), on behalf of itself and the Settlement Class, in exchange for $45,000,000 in cash pursuant to the terms of the Stipulation (the "Settlement"). If approved, the Settlement will resolve the Action in its entirety. Lead Plaintiff now seeks the Court's preliminary approval of the Settlement under Rule 23(e)(1) so that notice of the Settlement can be disseminated to the Settlement Class and the Settlement Hearing can be scheduled.

The Settlement represents an excellent result for the Settlement Class given the risks and challenges of continued litigation. In agreeing with Defendants[2] to resolve the Action, Lead

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 30, 2023 (the "Stipulation"). The Stipulation is attached as Exhibit 1 to the accompanying Declaration of Daniel Hume (the "Hume Decl."). The Preliminary Approval Order is attached as Exhibit A to the Stipulation; the Notice is attached as Exhibit A-1 to the Stipulation; the Claim Form is attached as Exhibit A-2 to the Stipulation; the Summary Notice is attached as Exhibit A-3 to the Stipulation; and the proposed Judgment Approving Class Action Settlement is attached as Exhibit B to the Stipulation. All other references to "Ex." are to exhibits annexed to the Hume Decl.

[2] "Defendants" refers collectively to: defendant Reata Pharmaceuticals, Inc. ("Reata"); defendants J. Warren Huff, Colin J. Meyer, and Manmeet S. Soni (the "Officer Defendants"); defendants James E. Bass, William D. McClellan, Jr., R. Kent McGaughy, Jack B. Nielsen, and William E. Rose (the "Director Defendants," and together with Reata and the Officer Defendants, the "Reata Defendants"); and defendants Barclays Capital Inc., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Jefferies LLC, Ladenburg Thalmann & Co., Inc., Robert W. Baird & Co. Incorporated, Stifel, Nicolaus & Company, Incorporated, and SVB Securities LLC, f/k/a SVB Leerink

1

Plaintiff and Lead Counsel made a fully informed evaluation of the risks of continued litigation and of the fairness of resolution at this time. Lead Plaintiff respectfully submits that the Settlement appropriately balances its objective of securing the largest possible recovery for the Settlement Class against the significant risk of receiving a smaller recovery, or no recovery at all, if Defendants were to prevail on their pending motion to dismiss, at summary judgment, or at trial.

The Settlement is the result of extensive arm's length negotiations conducted with the assistance of a well-respected and highly experienced mediator, Jed Melnick, Esq. of JAMS ("Mr. Melnick"). The settlement discussions included two in-person mediation sessions with Mr. Melnick, the exchange of multiple rounds of written mediation submissions, the Reata Defendants' production, and Lead Plaintiff's and Lead Counsel's review, of over two million pages of documents, and months of hard-fought negotiations supervised and facilitated by Mr. Melnick. The Settlement was reached only after Mr. Melnick made a mediator's proposal to settle the Action for $45,000,000 in cash – a proposal that each side ultimately accepted.

Prior to the settlement negotiations, Lead Plaintiff and Lead Counsel devoted significant time, effort, and resources to litigating the Action. By the time the Settlement was reached, Lead Plaintiff and Lead Counsel had: (i) conducted an extensive investigation into the facts and circumstances underlying the Consolidated Amended Class Action Complaint (the "CAC")'s allegations; (ii) drafted and filed the operative CAC; (iii) consulted with merits and damages experts; and (iv) fully briefed Defendants' motion to dismiss. Then, Lead Plaintiff and Lead Counsel engaged in months of settlement negotiations, which involved, among other things, a review of over two million pages of non-public documents produced by the Reata Defendants. Once Mr. Melnick's proposal was accepted, Lead Counsel reviewed thousands of additional pages

LLC, n/k/a Leerink Partners LLC (the "Underwriter Defendants").

2

of documents produced by the Reata Defendants and interviewed Officer Defendants J. Warren Huff and Colin J. Meyer to confirm the Settlement's reasonableness. Accordingly, Lead Plaintiff and Lead Counsel have a thorough understanding of the strengths, weaknesses, and risks of the Action, which informed their determination that the Settlement is fair, reasonable, and adequate.

In this motion, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class. Specifically, Lead Plaintiff requests that this Court enter the Preliminary Approval Order which will, *inter alia*: (i) grant preliminary approval of the Settlement; (ii) approve the form and manner of providing notice of the Settlement to the Settlement Class, including the form and content of the Notice, Claim Form, and Summary Notice; and (iii) schedule the final Settlement Hearing and related events. At the Settlement Hearing, following additional briefing and addressing any potential objections to the Settlement, Lead Plaintiff and Lead Counsel will ask the Court to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

For the reasons set forth herein, Lead Plaintiff submits that preliminary approval is warranted and respectfully requests that the Court enter the Preliminary Approval Order.

## STATEMENT OF FACTS

This Action was commenced on December 20, 2021 with the filing of a putative securities class action styled *Doyle et al. v. Reata Pharmaceuticals, Inc., et al.*, No. 4:21 Civ. 00987 (E.D. Tex.), on behalf of purchasers of Reata common stock. *See* ECF No. 1. Two other related putative class actions involving Reata followed.[3]

On April 22, 2022, following briefing, and pursuant to the Private Securities Litigation

---

[3] *See Filbert v. Reata Pharmaceuticals Inc., et al.*, No. 4:22 Civ. 00012 (E.D. Tex.); *Laborers' Dist. Council et al. v. Reata Pharmaceuticals Inc., et al.*, No. 4:22 Civ. 00041 (E.D. Tex.).

Reform Act of 1995 ("PSLRA"), this Court consolidated the related cases, appointed Wespath as Lead Plaintiff, and appointed Kirby McInerney LLP as Lead Counsel. *See* ECF Nos. 33-34.

On June 21, 2022, Lead Plaintiff filed the CAC asserting that Defendants were liable under the federal securities laws for making false and misleading statements and for omitting to disclose material adverse information concerning a phase 2/3 trial for Reata's drug, bardoxolone, known as the CARDINAL trial, including in offering documents for Reata's November 14, 2019 and December 1, 2020 secondary stock offerings (the "2019 Offering" and the "2020 Offering," respectively). *See* ECF No. 37.[4] The CAC further alleged that Reata's stock price was artificially inflated during the Class Period as a result of Defendants' allegedly false and misleading statements and omissions, and that the price declined when a series of alleged corrective disclosures starting in August 2020 began to reveal the truth.

On September 7, 2022, Defendants moved to dismiss the CAC. *See* ECF No. 59. On November 23, 2022, Lead Plaintiff filed its opposition to the motion (*see* ECF No. 60), and, on January 9, 2023, Defendants filed a reply in further support of their motion. *See* ECF No. 65.

On February 10, 2023, while the motion to dismiss was *sub judice*, the Parties notified the Court of their intention to mediate. *See* ECF No. 66. On February 13, 2023, the Court referred the Action to mediation and assigned Mr. Melnick as mediator. *See* ECF No. 67.

On April 25, 2023, Lead Counsel and counsel for the Reata Defendants, along with certain of the Reata Defendants and Lead Plaintiff's Associate General Counsel, participated in an in-person mediation session with Mr. Melnick and his staff. In advance of that session, Lead Counsel

---

[4] Specifically, the CAC alleged claims against: (i) Reata and the Officer Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; (ii) the Officer Defendants under Section 20(a) of the Exchange Act; (iii) Reata, the Director Defendants, the Underwriter Defendants, and Officer Defendants Huff and Meyer, under Section 11 of the Securities Act of 1933 (the "Securities Act"); (iv) all Defendants under Section 12(a)(2) of the Securities Act; and (v) the Officer Defendants and the Director Defendants under Section 15 of the Securities Act.

4

and counsel for the Reata Defendants exchanged detailed written submissions regarding the strengths and weaknesses of Lead Plaintiff's claims. The April 2023 mediation session ended without an agreement to settle. However, the Reata Defendants agreed to produce to Lead Plaintiff non-public documents relating to matters alleged in the CAC.

Over the next several months, the Reata Defendants produced, and Lead Plaintiff and Lead Counsel reviewed, over 2 million pages of documents. Thereafter, Lead Counsel and counsel for the Reata Defendants exchanged supplemental written submissions and then participated with client representatives in a second in-person mediation session with Mr. Melnick on July 24, 2023. The second mediation session culminated in a mediator's proposal to resolve the Action for $45,000,000 in cash for the benefit of the Settlement Class, which Lead Plaintiff and the Reata Defendants accepted on July 27, 2023. On September 1, 2023, the Parties executed a term sheet (the "Term Sheet") memorializing the key terms of their agreement.

Thereafter, the Parties worked diligently to negotiate the full settlement terms set forth in the Stipulation and its exhibits. They also engaged in substantial confirmatory discovery, including the production and review of an additional 16,023 pages of documents and Lead Counsel's interviews with Officer Defendants Huff and Meyer.

In accordance with the Stipulation, Defendants shall pay the Settlement Amount of $45,000,000 into the Escrow Account following preliminary approval of the Settlement. *See* Stipulation ¶ 8. The Settlement Amount, plus any and all interest earned thereon (the "Settlement Fund") less any Taxes, Notice and Administration Costs, Litigation Expenses awarded by the Court, and attorneys' fees awarded by the Court (the "Net Settlement Fund"), will be distributed amongst eligible Settlement Class Members in accordance with a plan of allocation to be approved by the Court (discussed below in more detail).

If the Court grants final approval of the Settlement, Settlement Class Members will release the Released Plaintiffs' Claims. *See* Stipulation ¶ 5. The scope of the negotiated release is reasonable, as it is limited to claims related to the purchase, acquisition, sale, or disposition of Reata securities during the Settlement Class Period and/or to allegations, transactions, facts, events, matters, occurrences, representations, and/or omissions involved, set forth, or referred to in the CAC in the Action or in any other related action that has been or could have been filed by a Settlement Class Member. *See* Stipulation ¶ 1(uu).

## ARGUMENT

### I.    Standards Governing Approval of Class Action Settlements

There is a longstanding policy and presumption in favor of class action settlements. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (noting an "overriding public interest in favor of settlement," "[p]articularly in class action suits"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

A district court's review of a proposed class action settlement involves a two-step process. *See* Newberg & Rubenstein on Class Actions § 13.12 (5th ed. 2016). *First*, the Court performs a preliminary review to determine whether "notice of the proposed settlement should be sent to the class." *Id*. § 13.10. *Second*, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement. *See Del Carmen v. R.A. Rogers, Inc.*, No. 16 Civ. 971, 2018 WL 4701824, at *5 (W.D. Tex. Apr. 25, 2018), *adopted by* 2018 WL 4688774 (W.D. Tex. June 13, 2018).

In deciding whether to grant final approval under Rule 23(e)(2), courts consider whether:

(A) the class representatives and class counsel have adequately represented the

class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]

At the preliminary approval stage, however, the court's review is less stringent. *See In re OCA, Inc. Secs. & Derivative Litig.*, No. 05 Civ. 2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). Under Rule 23(e)(1)(B), preliminary approval is warranted "if giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added); *see Jones v. Singing River Health Sys.*, No. 14 Civ. 447, 2016 WL 6106518, at *5 (S.D. Miss. Jan. 20, 2016) (the "preliminary fairness evaluation is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"). As a result, courts ordinarily grant preliminary approval where, as here, "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval." *In re OCA*, 2008 WL 4681369, at *11; *see also McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002).

---

[5] In determining whether to grant final approval of the Settlement, the Court will also be asked to consider the Fifth Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *see* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Courts of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

As discussed below, and as will be detailed further in Lead Plaintiff's subsequent motion for final approval, the Settlement is more than likely to meet all the factors required for final approval under Rule 23(e)(2) and for certification of the Settlement Class for purposes of entering judgment. As such, preliminary approval is warranted.

## I.    The Proposed Settlement Merits Preliminary Approval

### A.    The Settlement Is the Result of Thorough and Arm's Length Efforts by Adequate Representatives

A "presumption of fairness, adequacy, and reasonableness may attach to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012). Here, there can be no doubt that the Settlement was fairly and honestly negotiated by capable and skilled advocates for the Settlement Class, namely Lead Plaintiff and Lead Counsel, after meaningful discovery.

*First,* the Parties have been litigating this Action since 2021. As a result, Lead Counsel's settlement posture was informed by, among other things, its: (i) extensive work investigating and drafting the CAC and responding to Defendants' motion to dismiss; (ii) review of over 2 million pages of non-public Reata documents and interviews with Officer Defendants Huff and Meyer; (iii) preparation and review of multiple written mediation submissions; and (iv) consultations with merits and damages experts. Thus, Lead Counsel is fully aware of the strengths and weaknesses of the Action, and it conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class, while also accounting for the risks of continued litigation. *See Heartland*, 851 F. Supp. 2d at 1065 (approving settlement where parties "possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 432 (S.D. Tex. 1999) ("Considering the detailed analysis

of the experts, the apparent knowledgeability of class counsel, and the sheer mass of documents available to litigants, there is every indication that class counsel has had a sufficient understanding of the claims … to negotiate an appropriate settlement.").

*Second*, the settlement negotiations – which included the exchange of detailed written submissions and two in-person mediation sessions – were conducted at arm's length and facilitated by a highly experienced mediator. While the first session ended without a settlement, the Parties agreed to continue their negotiations and the Reata Defendants agreed to produce extensive non-public documents to Lead Plaintiff. Following Lead Plaintiff's review of those documents, the Parties attended a second mediation session, which culminated in an agreement to resolve the Action for $45,000,000, following a mediator's proposal to that effect. *See Billitteri v. Secs. Am., Inc.*, No. 10 ML 2145, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (finding no collusion in settlement reached through diligent arm's length negotiations before a neutral mediator); *In re Mannkind Corp. Secs. Litig.*, No. 11 Civ. 929, 2012 WL 13008151, at *5 (C.D. Cal. Dec. 21, 2012) (similar).

*Third*, during these litigation and settlement efforts, the Settlement Class was well represented by Lead Plaintiff, a sophisticated institutional investor that suffered substantial losses resulting from its purchases of Reata common stock during the Settlement Class Period. Lead Plaintiff's claims are typical of and coexistent with those of other Settlement Class Members and, like the rest of the Settlement Class, Lead Plaintiff has an interest in obtaining the largest possible recovery from Defendants. *See* Points II.A.3-4, *infra*; *see also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502-03 (S.D. Tex. 2004). Moreover, Lead Plaintiff has been represented by knowledgeable and experienced counsel, well-versed in shareholder class actions and securities fraud litigation. Kirby McInerney LLP is among the most experienced and skilled firms in the

securities litigation arena and has a long, successful track record in such cases. *See* Hume Decl. Ex. 2 (Kirby McInerney resume).[6]

Accordingly, the Settlement is the product of informed, fair, and honest negotiations between sophisticated parties and counsel, following extensive investigation, litigation, and discovery, and is deserving of preliminary approval. *See Billitteri*, 2011 WL 3586217, at *11 (approving settlement where litigation was ongoing "for approximately two years" and, although there "ha[d] not been a full range of discovery," counsel had reviewed "millions of pages of documents" and deposed "key players" and thus, the parties "possess[ed] ample information with which to evaluate the merits of the[ir] competing positions"); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12 Civ. 1609, 2015 WL 965693, at *8 (W.D. La. Mar. 3, 2015) (similar).

**B.     The Relief Provided by the Settlement Is Adequate and Reasonable**

Rule 23(e)(2)(C) directs courts to evaluate whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). Here, Defendants' agreement to settle the Action for $45,000,000 is well within the range of reasonableness for several reasons.

*First*, the Settlement represents a very favorable recovery when compared to the median settlement value in securities class actions settled in 2022, which was reported by Cornerstone Research to be $13 million. *See* Hume Decl. Ex. 3 at 1 (Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, Cornerstone Research (2023)).

*Second*, the Settlement represents approximately 4% of the $1.138 billion in class-wide damages that Lead Plaintiff believes could have been recovered in the event of a trial victory that withstood subsequent appeals. This is well above the median recovery obtained in recent securities

---

[6] *See also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Cotton*, 559 F.2d at 1330 (the court "is entitled to rely upon the judgment of experienced counsel" given their familiarity with the intricacies of the lawsuit and settlement).

class actions involving a similar damages amount. *See* Hume Decl. Ex. 4 at 17 (Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting (Jan. 24, 2023)) (finding median settlement between 2011-2022 in securities cases with investor losses between $1 billion and $4.999 billion recovered 1.3% of investor losses). Notably, the above damages estimate accounts for Defendants' likely argument that confounding news was released on the alleged corrective disclosure dates and that Lead Plaintiff bore the burden of proof to parse out the effect of that news. It also accounts for Defendants' likely argument that the alleged August 2020 and August 2021 corrective disclosures did not cause damages arising from the alleged fraud, as well as Lead Counsel's assessment, following its review of Reata's internal documents, that falsity and/or scienter could be difficult to prove for alleged misstatements and omissions made prior to October 2018.[7]

*Third*, a key factor in assessing a proposed class action settlement is "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Slipchenko v. Brunel Energy, Inc.*, No. 11 Civ. 1465, 2015 WL 338358, at *11 (S.D. Tex. Jan. 23, 2015); *see Heartland*, 851 F. Supp. 2d at 1067. Here, Lead Plaintiff and the Settlement Class would have faced numerous risks that could have precluded securing any recovery at all, let alone a recovery greater than the Settlement Amount.

Indeed, the Settlement came at a moment of substantial uncertainty in the Action, with Defendants' motion to dismiss pending. An adverse decision could have drastically truncated the Class Period, or it could have resulted in the Action's dismissal entirely. In their motion to dismiss,

---

[7] Even if liability could have been established with respect to *all* claims for the *entirety* of the Class Period, Lead Plaintiff's consulting damages expert estimates that maximum aggregate damages recoverable under the Exchange Act would have been approximately $2.392 billion. The Settlement represents approximately 1.9% of this amount, which is still more than the median recovery of 1.3% obtained in securities class actions involving similar damages amounts. *See* Hume Decl. Ex. 4 at 17 (Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting (Jan. 24, 2023)).

Defendants vigorously argued that they made no misrepresentations about the CARDINAL trial's four-week washout period and even if they did, they did not do so with scienter. Defendants also denied any duty to disclose the FDA's purported concerns regarding CARDINAL's washout period, arguing that any such concerns did not allegedly relate to the adequacy of the four-week washout period, and in any event, those concerns were expressed during ordinary back-and-forth between Reata and the FDA. Defendants further argued that the CAC's allegations were not pleaded with sufficient particularity because the CAC did not specify the dates on which the FDA first conveyed any concerns to Reata.

Although Lead Plaintiff and Lead Counsel believed in their prospects of success on the motion, as discussed above, the non-public Reata documents that Lead Plaintiff reviewed during the mediation process could be interpreted to suggest an absence of falsity and/or scienter for the alleged misrepresentations and omissions made prior to October 2018. As such, Lead Plaintiff's success on the motion with respect to this early portion of the Class Period was far from certain.

Moreover, even if Lead Plaintiff succeeded in defeating Defendants' motion to dismiss entirely, it still faced class certification, summary judgment, and *Daubert* motions, as well as trial and appeals. As noted above, Lead Plaintiff would have faced potential difficulty in ultimately proving liability for the entirety of the Class Period. It would also have faced considerable risks in proving (i) that Defendants' alleged misrepresentations and omissions caused Lead Plaintiff's and the Settlement Class's alleged losses, and (ii) damages and the amount thereof. Moreover, to prove loss causation and damages on its Exchange Act claims, Lead Plaintiff would have had to rely on expert testimony. At trial, these crucial issues would therefore have turned on an unpredictable "battle of experts." *See Celeste Neely,* Nos. 4:21 Civ. 307, 4:21 Civ. 347, 2022 WL 17736350, at *7 (E.D. Tex. Dec. 16, 2022) (approving settlement where damages issues would have devolved into an

12

unpredictable and "protracted battle of the experts").

The Settlement avoids all these risks and achieves a substantial recovery without the need for prolonged and uncertain litigation. It also avoids the considerable expense of continued litigation, which could have gone through summary judgment, trial, and a lengthy appeals process. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010).

### C. The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or Any Segment of the Settlement Class

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. Rather, all Settlement Class Members, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court at the Settlement Hearing.[8] For approval, a plan of allocation "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *In re Dell Inc., Secs. Litig.*, No. 06 Civ. 726, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010), *aff'd, Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012).

Here, the proposed Plan of Allocation, which is set forth in full in the Notice and was prepared by Lead Counsel with the assistance of its consulting damages expert, provides for distribution of the Net Settlement Fund to Settlement Class Members who timely submit valid Claim

---

[8] In connection with Lead Counsel's application for attorneys' fees and litigation expenses, Lead Plaintiff may seek reimbursement of its reasonable costs and expenses directly related to its participation in the Action. Reimbursement of Lead Plaintiff's costs and expenses is explicitly contemplated by the PSLRA and does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (limiting a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also providing that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

Forms demonstrating a loss on their transactions in Reata common stock purchased or acquired during the Settlement Class Period. The formula to apportion the Net Settlement Fund among Settlement Class Members is based on the estimated amount of artificial price inflation in Reata common stock over the course of the Settlement Class Period that was allegedly caused by Defendants' misconduct.

The Plan of Allocation provides for the calculation of a Recognized Loss amount for each properly documented purchase or acquisition of Reata common stock during the Settlement Class Period. It is designed to equitably distribute the Settlement proceeds among Settlement Class Members based on when they purchased, acquired, and/or sold their Reata common stock, including (i) whether they purchased their shares in an offering or on the open market, (ii) whether their shares were held through an alleged corrective disclosure, (iii) whether their shares were held through or sold during the statutory 90-day lookback period (*see* 15 U.S.C. § 78u-4(e)), and (iv) the value of their shares when they were sold or held.

For Settlement Class Members who have Section 11 claims, the Plan also provides an appropriate enhancement to their Section 10(b) losses to account for the fact that a *prima facie* Section 11 claim does not require proof of scienter, reliance, or loss causation. *See In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, No. 01 Civ. 3624, 2008 WL 4178151, at *5 (S.D. Tex. Sept. 8, 2008) (plan of allocation that "took into consideration … interclass distinctions based on the relative strength and weaknesses of the different claims" was "fair, adequate, and reasonable").

Similarly, the Plan accounts for the evidence that can be interpreted to suggest an absence of scienter prior to October 2018, as well as the argument that the August 2020 and August 2021 disclosures do not directly relate to the FDA's alleged concerns about the four-week washout period's adequacy. In weighing the relative strength of the claims, Lead Counsel concluded that

14

claims based on purchases of Reata common stock during the Settlement Class Period prior to October 23, 2018 involved difficulties of proof that justified an adjustment under the Plan of Allocation. Similarly, although the Plan's Recognized Loss amounts are based primarily on the price declines in Reata common stock, as quantified by Lead Plaintiff's consulting damages expert, they also reflect Lead Counsel's assessment of potential loss causation defenses associated with each corrective disclosure date. *See In re Waste Mgmt., Inc. Secs. Litig.*, No. 99 Civ. 2183, 2002 WL 35644013, at *23 (S.D. Tex. May 10, 2002) (approving plan of allocation that "applied weighting factors to account for the relative strength of claims throughout the Class Period").

In short, the above-described allocation methodology ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained in relation to their respective litigation risks, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See, e.g.*, *In re OCA, Inc. Secs. & Derivative Litig.*, No. 05 Civ. 2165, 2009 WL 512081, at *6 (E.D. La. Mar. 2, 2009); *In re Dell Inc.*, 2010 WL 2371834, at *10.

### D.    The Proposed Attorneys' Fee Request Is Reasonable

The Settlement does not grant excessive compensation to Lead Counsel. In fact, it does not contemplate any specific award to Lead Counsel. Rather, Lead Counsel will be compensated under the common fund doctrine and will not be compensated by Defendants. The Court will determine the reasonableness of Lead Counsel's requested fee after Lead Counsel files a motion for attorneys' fees and expenses in connection with final approval. *See In re OCA*, 2008 WL 4681369, at *14.

The Notice provides that Lead Counsel plans to apply for an award of attorneys' fees not to exceed 33 and 1/3% of the Settlement Fund, plus reimbursement of reasonable expenses. This is within the range that courts in the Fifth Circuit regularly approve in securities class actions. *See In re Bayou Sorrel Class Action,* No. 04 Civ. 1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31,

15

2006) (awarding 36% of the common fund); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02 Civ. 1152, 2018 WL 1942227, at *17 (N.D. Tex. Apr. 25, 2018) (awarding 33 and 1/3% of the common fund); *Celeste Neely*, 2022 WL 17736350, at *11 ("courts frequently award attorney's fees" of "over thirty-three percent").

A fee of up to 33 and 1/3% of the Settlement Fund also befits the substantial risks that Lead Counsel undertook in expending significant time, effort, and resources in litigating this Action and obtaining an excellent recovery for the Settlement Class. Of course, Settlement Class Members will have an opportunity to weigh in on Lead Counsel's fee request before the Settlement Hearing, where the Court will decide whether to approve the request as reasonable.

**E.      Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement**

In connection with the Settlement, the Parties have entered into a confidential Supplemental Agreement regarding requests for exclusion, dated October 30, 2023. *See* Stipulation ¶ 35. The Supplemental Agreement sets forth the conditions under which Defendants can withdraw from the Settlement should requests for exclusion from the Settlement Class (*i.e.,* opt-outs) exceed certain agreed-upon thresholds (the "Termination Threshold").[9]

As is standard practice in securities class actions, the Supplemental Agreement is not being made public solely to avoid incentivizing the formation of a group of opt-outs who are motivated to exclude themselves from the Settlement for the sole purpose of leveraging the Termination Threshold to exact an individual settlement. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16 Civ. 1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). Pursuant to its terms, the Supplemental

---

[9] This type of agreement is standard in securities class actions and has no negative impact on the Settlement's fairness. *See Hefler v. Wells Fargo & Co.*, No. 16 Civ. 5479, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018).

Agreement may be submitted to the Court *in camera* or under seal.

In addition, as noted above, the Parties executed a Term Sheet prior to the Stipulation that memorialized all material terms of their agreement in principle to resolve the Action. The Term Sheet has now been superseded by the Stipulation. The Stipulation, Supplemental Agreement, and Term Sheet are the Parties' only agreements concerning the Settlement.

## II.     The Proposed Settlement Class Should Be Certified for Settlement Purposes

In connection with final approval, the Court will be asked to certify the Settlement Class, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3). At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the proposed Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B).

Courts have long acknowledged the propriety of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (certification of a settlement class is "the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants"). A settlement class, however, like all other certified classes, must satisfy the requirements of Rules 23(a) and 23(b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

Here, the proposed Settlement Class is defined in the Stipulation as: "All persons or entities who purchased or otherwise acquired the publicly traded common stock of Reata between November 14, 2016 and December 8, 2021, inclusive, including all persons or entities who purchased or otherwise acquired Reata common stock pursuant and/or traceable to Reata's 2019

17

Offering and/or 2020 Offering (the 'Offerings Subclass')." Stipulation ¶ 1(zz).[10] The proposed

Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

### A.  The Settlement Class Satisfies Rule 23(a)'s Requirements

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of

all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.

R. Civ. P. 23(a); *Amchem*, 521 U.S. at 613.[11] The Settlement Class satisfies these requirements.

### 1.  The Class Is So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). Classes comprised of persons or entities that traded a

---

[10] Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as a partner, control person, executive officer, and/or director of Reata during the Settlement Class Period, and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Reata; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of their Immediate Family; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (v) hereof; provided, however, that any "Investment Vehicle" shall not be excluded from the Settlement Class. Investment Vehicle means any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Notice. *See id.*

[11] Courts in the Fifth Circuit also read "an implied requirement of ascertainability into Rule 23(a)." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 133 (E.D. La. 2013). To satisfy this requirement, the proposed class "must be adequately defined and clearly ascertainable by reference to objective criteria," and the class definition must be "sufficiently definite" such that it is "administratively feasible for the court to determine whether a particular individual is a member." *Carroll v. SGS Auto. Servs., Inc.*, No. 16 Civ. 537, 2021 WL 2550278, at *1 (M.D. La. June 22, 2021). Here, the Settlement Class definition is "clear and definite," *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015), and membership in the Settlement Class "turns on the objective, verifiable criterion of having purchased a particular security within a particular date range." *Rensel v. Centra Tech., Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021). As such, the ascertainability requirement is easily satisfied here. *See, e.g., Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, No. 19 Civ. 1227, 2022 WL 118104, at *6 (E.D. Pa. Jan. 12, 2022) (ascertainability requirement met where "proposed class [wa]s defined by objective criteria in that it consist[ed] of all individuals and entities that purchased HCSG common stock during a specific period of time" and where a "reliable method for identifying the class members [existed] since they c[ould] be identified through the shareholder records maintained by HCSG").

18

"nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded" are assumed to be "so numerous that joinder of all members is impracticable." *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17 Civ. 02399, 2019 WL 6111303, at *5 (S.D. Tex. Nov. 13, 2019), *report and recommendation adopted,* 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019); *see also Marcus v. J.C. Penney Co., Inc.*, No 6:13 Civ. 736, 2016 WL 8604331, at *1-2 (E.D. Tex. Aug. 29, 2016) (numerosity is "assumed to have been met in class action suits involving nationally traded securities").

Here, throughout the Class Period, Reata common stock was actively traded on the NASDAQ, and, according to Lead Plaintiff's consulting damages expert, it had an average daily trading volume of 285,461 shares and a float of approximately 29.5 million shares. For this reason, Settlement Class Members are likely to number in the hundreds or thousands and to be located nationwide. *See Marcus*, 2016 WL 8604331, at *2 (quoting *In re Dynegy, Inc. Secs. Litig.*, 226 F.R.D. 263, 268-69 (E.D. Tex. 2005)) (where securities trade on a national exchange, "the individuals or entities that traded [the] securities are almost certainly located nationwide," making "joinder of all members . . . impracticable"). Accordingly, Rule 23(a)(1)'s numerosity requirement is easily satisfied here. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (class of 100-150 members satisfied numerosity).

### 2.    There Are Common Questions of Law or Fact

The threshold for Rule 23(a)(2)'s commonality requirement "is not high," and "is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Marcus*, 2016 WL 8604331, at *3; *see In re Cobalt Int'l Energy, Inc. Secs. Litig.*, No. 14 Civ. 3428, 2017 WL 2608243, at *2 (S.D. Tex. June 15, 2017) (commonality requires that class members' claims share a common issue "whose resolution will resolve an issue that is central to the validity of each [member's] claims in one stroke").

Here, there are numerous questions common to all Settlement Class Members including whether (1) Defendants misstated or omitted material facts, (2) certain Defendants acted with scienter, and (3) Reata's stock price was artificially inflated during the Class Period. *See KB Partners I, L.P. v. Barbier*, No. 11 Civ. 1034, 2013 WL 2443217, at \*11 (W.D. Tex. June 4, 2013).

### 3.    Lead Plaintiff's Claims Are Typical

Rule 23(a)(3)'s typicality requirement is satisfied where the proposed class representative's claims "arise from a similar course of conduct and share the same legal theory" as other class members' claims. *Cobalt*, 2017 WL 2608243, at \*2. "[T]he test for typicality is not demanding," and "[t]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Marcus*, 2016 WL 8604331, at \*3.

Here, Lead Plaintiff, like all Settlement Class Members, purchased Reata common stock during the Class Period at prices allegedly inflated by Defendants' alleged misconduct and was harmed when the relevant truth was revealed. As such, Lead Plaintiff's claims are typical of those of other Settlement Class Members. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, No. 15 Civ. 374, 2018 WL 1558571, at \*3 (W.D. Tex. Mar. 29, 2018).

### 4.    Lead Plaintiff and Lead Counsel Are Adequate Representatives

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry encompasses both class representatives and their counsel and "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625.

Here, Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Settlement Class fairly and adequately. *See* Point I.A, *supra*; *see also Netsky v. Capstead Mortg. Corp.*, 2000 WL 964935, at \*5 (N.D. Tex. July 12, 2000) ("Congress has expressed its preference for securities fraud litigation to be directed by large institutional

20

investors"). Moreover, there is no antagonism or conflict of interest between Lead Plaintiff and the Settlement Class. Rather, based upon its substantial investment in Reata common stock and the losses it suffered as a result of Defendants' alleged misconduct, Lead Plaintiff's interest in maximizing its recovery from Defendants is directly aligned with those of the Settlement Class.

Furthermore, Lead Counsel has extensive experience and expertise in litigating complex securities litigation and class action proceedings throughout the United States. *See* Point I.A, *supra*; Hume Decl. Ex. 2 (Kirby McInerney resume). Thus, Lead Counsel is well qualified and has ably and effectively represented Lead Plaintiff and the Settlement Class throughout the Action.

### B.    The Settlement Class Satisfies Rule 23(b)(3)'s Requirements

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, those requirements are met here.

### 1.    Common Questions of Law or Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*., 521 U.S. at 623. The Supreme Court has noted that predominance is "readily met" in securities fraud cases, such as this one. *Id.* at 625; *see also In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 570 (E.D. Tex. 2005), *aff'd, Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) (same).

Lead Plaintiff's Securities Act claims rest on a common set of alleged misstatements and omissions in offering documents and thus, turn in large part on the common, class-wide question of whether those documents contained material misrepresentations or omissions. *See Cobalt*, 2017 WL 2608243, at *4. Similarly, the core liability issues of Lead Plaintiff's Exchange Act claims – falsity, materiality, scienter, and loss causation – are issues whose proof can be made

21

on a class-wide basis.[12] And because reliance may be presumed here under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) and/or *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) (*see* CAC ¶ 438-40), individual issues of reliance will not predominate either.

### 2.      A Class Action is the Superior Method of Adjudication

Rule 23(b)(3) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. In assessing a class action's "superiority," courts evaluate: "(A) the class members' interest in individually controlling their separate actions, (B) the extent and nature of existing litigation by class members concerning the same claims, (C) the desirability of concentrating the litigation in the particular forum, and (D) the likely difficulties of managing a class action." *Elec. Data Sys.*, 226 F.R.D. at 570; *see* Fed R. Civ. P. 23(b)(3). These factors weigh in favor of superiority here.

To date, Lead Counsel is not aware of any individual class members interested in bringing their own action against Defendants for securities fraud. Moreover, without the settlement class device, Defendants could not obtain a class-wide release, and would have had little, if any, incentive to enter the Settlement. Finally, certification of the Settlement Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

### III.      The Proposed Notice Plan and Forms Should Be Approved

Rule 23(c)(2) requires notice to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Supreme Court has held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

---

[12] Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," and thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 467 (2013). The same is the case for loss causation, scienter, and falsity. *See Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation); *Elec. Data Sys.*, 226 F.R.D. at 570 (falsity and scienter).

of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Here, the proposed notice plan, along with the Notice and Summary Notice, easily satisfy these requirements.

As outlined in the proposed Preliminary Approval Order, the Claims Administrator[13] will mail, by first-class mail, the Notice and Claim Form to all Settlement Class Members who can be identified through reasonable effort, including through Reata's customary list of shareholders of record during the Settlement Class Period. To disseminate notice, the Claims Administrator will also utilize its proprietary list of banks, brokers, and other nominees that purchase securities on behalf of beneficial owners. The Claims Administrator will also publish the Summary Notice in *Investor's Business Daily* and will transmit the Summary Notice over *PR Newswire*. It will also develop and maintain a dedicated case website (www.ReataSecuritiesLitigation.com).[14]

Collectively, the proposed Notice and Summary Notice advise recipients of, *inter alia*: (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the Settlement Class's claims, issues, and defenses; (iv) the Settlement's terms; (v) the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, reasonable, and adequate; (vi) the procedures for requesting exclusion from the Settlement Class or objecting to the Settlement; (vii) the procedures for entering an appearance through an attorney; (viii) the procedures for submitting a Claim; (ix) the binding effect of a class judgment; (x) the proposed plan for allocating the net proceeds of the Settlement; (xi) the date, time, and place of the Settlement Hearing; and

---

[13] In connection with preliminary approval, Lead Plaintiff requests that the Court approve Lead Counsel's retention of Epiq as Claims Administrator for the Settlement. Selected following a formal bidding process, Epiq is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. A copy of Epiq's résumé is attached as Exhibit 5 to the Hume Decl.

[14] The Parties have also agreed that Reata, on behalf of all Defendants, shall be responsible for timely serving the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq*. *See* Stipulation ¶ 58.

(xii) how to obtain additional information regarding the Settlement.[15]

The Notice also satisfies the PSLRA's requirements by stating: (i) the Settlement amount determined in the aggregate and on an average per share basis;[16] (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intends to apply for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7).

This manner of providing notice, which includes notice by first-class mail to Settlement Class Members who can be reasonably identified, supplemented by publication and internet notice, represents "the best notice that is practicable under the circumstances" and satisfies the requirements of Rule 23, due process, and all other applicable laws and rules. *In re OCA*, 2008 WL 4681369, at *14-16 (notice by publication and mail is appropriate); *Schwartz*, 2005 WL 3148350, at *11 (same).

## IV.    Proposed Schedule of Settlement-Related Events

Lead Plaintiff respectfully proposes the below schedule for Settlement-related events. If the Court agrees with the proposed schedule, Lead Plaintiff respectfully requests that the Court schedule the Settlement Hearing for a date no earlier than 120 calendar days after the entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

---

[15] *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8, 2015) (approving notice providing information regarding how settlement fund will be allocated, class members' rights to exclude themselves and to object to the settlement, and the date of the settlement hearing, among other things).

[16] As reported in the Notice, the average recovery per alleged damaged share of Reata common stock is approximately $1.67 per share before deduction of Court-approved attorneys' fees and expenses, and the average cost per affected share should the Court approve Lead Counsel's requested attorneys' fees and expenses would be approximately $0.57. These recovery amounts are only estimates and individual recoveries may differ, depending upon when and at what price the Settlement Class Member purchased, acquired, and/or sold their shares, whether the shares were purchased in or traceable to the 2019 or 2020 Offerings, and the total number and value of valid claims received.

24

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for mailing Notice and Claim Form to potential Settlement Class Members (Preliminary Approval Order ("PAO") ¶ 7(b)) | 20 business days after the date of entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice (PAO ¶ 7(d)) | 10 business days after the Notice Date |
| Deadline for filing papers supporting final approval of Settlement, Plan of Allocation, and motion for attorneys' fees and Litigation Expenses (PAO ¶ 26) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusions or objections (PAO ¶¶ 13, 16) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (PAO ¶ 26) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (PAO ¶ 5) | No earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Claim Form submission deadline (PAO ¶ 10) | 120 calendar days after the Notice Date |

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order, which will, *inter alia*: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and form of notice to Settlement Class Members; (iii) appoint Epiq as the Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters; and (v) grant such other and further relief as may be required.

Dated:  November 3, 2023

Respectfully submitted,

**STECKLER WAYNE COCHRAN CHERRY PLLC**

*/s/ Bruce W. Steckler*
Bruce W. Steckler
State Bar No. 00785039
Austin P. Smith
State Bar No. 24102506
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: 972-387-4040
Facsimile: 972-387-4041
Email: bruce@swclaw.com
　　　 austin@swclaw.com

*Local Counsel for Lead Plaintiff and the Proposed Settlement Class*

**KIRBY McINERNEY LLP**
Daniel Hume (admitted *pro hac vice*)
Meghan J. Summers (admitted *pro hac vice*)
Ira M. Press (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: 212-371-6600
Facsimile: 212-751-2540
Email: dhume@kmllp.com
　　　 msummers@kmllp.com
　　　 ipress@kmllp.com

*Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Additional Counsel for the Proposed Settlement Class*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

/s/ Bruce Steckler
Bruce Steckler