**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

|  |  |
|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>REATA PHARMACEUTICALS, INC., *et al.*<br><br>                    Defendants. | Case No. 4:21-cv-00987-ALM LEAD<br><br><u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND**
<u>**MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.     The Proposed Settlement Warrants Final Approval ........................................................ 3

     A.     Standards Governing Final Approval of Class Action Settlements ....................... 3

     B.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class .............................................................................................. 4

     C.     The Settlement Was Negotiated at Arm's Length with No Fraud or Collusion ......................................................................................................... 6

     D.     The Settlement Is Adequate in Light of the Costs and Delays of Continued Litigation ............................................................................................... 7

     E.     The Stage of the Proceedings, the Amount of Discovery Completed, and Lead Plaintiff and Lead Counsel's Investigation Support Final Approval of the Settlement ................................................................................... 9

     F.     The Settlement Is within a Reasonable Range of Recovery ............................... 10

     G.     Lead Counsel, Lead Plaintiff, and Settlement Class Members Support Final Approval ................................................................................................. 14

     H.     The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval ................................................................................................................ 15

          1.     The Proposed Method for Distributing the Settlement Proceeds Is Effective ........................................................................... 15

          2.     The Requested Fees and Expenses Are Fair and Reasonable ................... 16

          3.     The Supplemental Agreement Does Not Affect the Settlement's Fairness ........................................................................... 17

          4.     The Settlement Treats Settlement Class Members Equitably ................... 18

II.     The Plan of Allocation Is Fair, Reasonable, and Adequate and Should Be Approved ............................................................................................................... 18

III.     Notice to the Settlement Class Satisfied Rule 23 and Due Process ................................. 21

i

IV.    The Court Should Affirm Certification of the Settlement Class for
       Settlement Purposes........................................................................................22

CONCLUSION........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ................................................................................. 10

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................ 9

*Billitteri v. Sec. Am., Inc.*,
  No. 11 Civ. 191, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........................... 7, 10

*Celeste Neely*,
  No. 21 Civ. 307, 2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ..................... 10, 13

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ................................................................................. 18

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
  No. 12 Civ. 1609, 2015 WL 965693 (W.D. La. Mar. 3, 2015) ................................ 10

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................... 14

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ................................................................................. 3

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ................................................................................... 3

*In re Dell Inc., Sec. Litig.*,
  No. 06 Civ. 726, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ............................ 7, 16, 19, 21

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
  No. 01 Civ. 3624, 2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) ............................ 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 02 Civ. 1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................... 7, 17, 18

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................................................................7, 11

*Jenkins v. Trustmark Nat'l Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014) ......................................................................... 3, 9

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) ........................................................................ 21

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................................... 7, 10

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................ 7, 8, 10

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) ............................................................. 10

*Marcus v. J.C. Penney Co., Inc.*,
   No. 13 Civ. 736, 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ................................ 5

*Marcus v. J.C. Penney Co., Inc.*,
   No. 13 Civ. 736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ............................... 14

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) ......................................................... 20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ......................................................................... 21

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ............................................................ 17

*Netsky v. Capstead Mortg. Corp.*,
   2000 WL 964935 (N.D. Tex. July 12, 2000) ..................................................... 5

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ................................................................. 4

*In re OCA, Inc. Sec. & Derivative Litig.*,
   No. 05 Civ. 2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ................................ 9, 13, 16, 21

*In re OCA, Inc. Sec. & Derivatives Litig.*,
   No. 05 Civ. 2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ................................. 22

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013) .............................................................. 15

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ......................................................... *passim*

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................... 9

iv

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ....................................................................*passim*

*Slipchenko v. Brunel Energy, Inc*.,
    No. 11 Civ. 1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015)..................................................11

*In re Waste Mgmt., Inc. Secs. Litig*.,
    No. 99 Civ. 2183, 2002 WL 35644013 (S.D. Tex. May 10, 2002)...........................................20

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................... 18, 19, 22

**Rules**

Fed. R. Civ. P. 23...............................................................................................................*passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff UMC Benefit Board, Inc., US Equity Fund-P Series, a series of the Wespath Funds Trust, US Equity Index Fund-P Series, a series of the Wespath Funds Trust, Wespath Institutional Investments LLC, US Equity Fund-I Series, a series of the Wespath Funds Trust, and US Equity Index Fund-I Series, a series of the Wespath Funds Trust ("Lead Plaintiff"), on behalf of itself and all other Settlement Class Members, hereby respectfully moves for final approval of the proposed settlement (the "Settlement") of the above-captioned action (the "Action"), and for approval of the proposed plan for allocating the Settlement proceeds (the "Plan of Allocation").[1]

## PRELIMINARY STATEMENT

After nearly two years of hard-fought litigation, Lead Plaintiff, on behalf of itself and the Settlement Class, reached an agreement with Defendants[2] to resolve the Action in exchange for $45,000,000 in cash. As described below and in the accompanying Hume Declaration,[3] the Settlement represents an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous obstacles and risks. As a result, Lead Plaintiff

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 30, 2023 (the "Stipulation"). *See* ECF No. 74-2. Citations herein to "¶ __" are to the Declaration of Daniel Hume in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Hume Declaration" or "Hume Decl."), filed concurrently herewith. Citations herein to "Ex. __" are to the exhibits annexed to the Hume Declaration. Citations to exhibits that have attached exhibits will be referenced as "Ex. __-__." The first numerical reference is to the entire exhibit attached to the Hume Declaration and the second alphabetical reference is to the exhibit within that exhibit.

[2] "Defendants" refers collectively to: defendant Reata Pharmaceuticals, Inc. ("Reata"); defendants J. Warren Huff, Colin J. Meyer, and Manmeet S. Soni (collectively, the "Officer Defendants"); defendants James E. Bass, William D. McClellan, Jr., R. Kent McGaughy, Jack B. Nielsen, and William E. Rose (collectively, the "Director Defendants," and together with Reata and the Officer Defendants, the "Reata Defendants"); and defendants Barclays Capital Inc., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Jefferies LLC, Ladenburg Thalmann & Co., Inc., Robert W. Baird & Co. Incorporated, Stifel, Nicolaus & Company, Incorporated, and SVB Securities LLC, f/k/a SVB Leerink LLC, n/k/a Leerink Partners LLC (collectively, the "Underwriter Defendants").

[3] The Court is respectfully referred to the Hume Declaration, filed concurrently herewith, for a detailed description of, *inter alia*: (i) the history of the Action; (ii) the nature of the claims asserted; (iii) the negotiations leading to the Settlement; (iv) the risks and uncertainties of continued litigation; (v) the services Plaintiffs' Counsel provided for the Settlement Class; and (vi) the terms of the Plan of Allocation.

respectfully submits that the proposed Settlement is substantively fair, reasonable, and adequate.

Moreover, the process by which the Settlement was obtained supports a finding of procedural fairness. As detailed in the Hume Declaration, Lead Plaintiff's and Lead Counsel's litigation efforts in this case, prior to negotiating the Settlement, were extensive and included: (i) an exhaustive investigation into the facts and circumstances underlying the claims asserted against Defendants; (ii) the drafting and filing of the Consolidated Amended Class Action Complaint ("CAC"); (iii) consultations with merits and damages-related experts, including an expert on the Food and Drug Administration ("FDA")'s drug approval process; and (iv) full briefing on Defendants' motion to dismiss. *See* ¶¶ 5, 26-37.

Then, while Defendants' motion to dismiss was *sub judice*, the Parties engaged in months of hard-fought, arm's length settlement negotiations conducted with the assistance of well-respected and highly experienced mediator, Jed Melnick, Esq. of JAMS ("Mr. Melnick"). *See* ¶¶ 5, 38-45; Ex. 6 ¶¶ 4-13. Those negotiations involved two formal mediation sessions, the exchange of multiple rounds of written mediation submissions, and Plaintiffs' Counsel's[4] review of over two million pages of non-public documents produced by the Reata Defendants. *See* ¶¶ 5, 38-45; Ex. 6 ¶¶ 4-11, 13. Following the Parties' acceptance of Mr. Melnick's mediator's proposal to settle the Action for $45 million, the Parties then engaged in substantial additional discovery to confirm the Settlement's adequacy, including, *inter alia*, Plaintiffs' Counsel's review of thousands of additional pages of documents produced by the Reata Defendants, and Lead Counsel's interviews with Officer Defendants J. Warren Huff and Colin J. Meyer. *See* ¶¶ 5, 47.

Through this effort, Lead Plaintiff and Lead Counsel gained a thorough understanding of

---

[4] "Plaintiffs' Counsel" refers collectively to (i) Lead Counsel, Kirby McInerney LLP, (ii) Local Liaison Counsel, Steckler Wayne & Love PLLC, and (iii) additional plaintiffs' counsel, Glancy Prongay & Murray LLP.

the strengths and weaknesses of the case, and the many risks of continued litigation – including the very real risk of a substantially smaller recovery or no recovery at all – all of which informed their determination that the Settlement is fair, reasonable, and adequate. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Lead Plaintiff also respectfully requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice mailed to potential Settlement Class Members. Lead Plaintiff submits that the Plan of Allocation, developed by Lead Counsel in consultation with Lead Plaintiff's consulting damages expert, provides a fair, reasonable, and adequate method for allocating the Net Settlement Fund. As such, it too should be approved.[5]

## ARGUMENT

## I.    The Proposed Settlement Warrants Final Approval

### A.    Standards Governing Final Approval of Class Action Settlements

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. *See* Fed. R. Civ. P. 23(e). Because the settlement of class action disputes "minimize[s] the litigation expenses of the parties and reduce[s] the strain that litigation imposes upon already scarce judicial resources," *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014), the Fifth Circuit has long recognized a strong public policy in favor of pretrial settlements of class actions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting a public interest favoring class

---

[5] Lead Plaintiff also respectfully requests that the Court affirm its certification of the Settlement Class for settlement purposes pursuant to Rules 23(a) and (b)(3), as nothing has changed to alter the propriety of the Court's findings in its Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") regarding certification. *See* ECF No. 76 ¶¶ 1-3. Lead Plaintiff's Unopposed Motion for an Order Preliminarily Approving the Proposed Class Action Settlement and Authorizing Dissemination of Notice to the Settlement Class and Memorandum of Law in Support Thereof ("Preliminary Approval Motion") (ECF No. 74), including the reasons supporting certification of the Settlement Class set forth therein, are incorporated herein by reference.

action settlements).

The standard for determining whether final approval is warranted is whether the proposed

class action settlement is fundamentally "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In making this determination, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. Rule 23(e)(2) (as amended on December 1, 2018).

Courts in the Fifth Circuit must also consider the following six factors in determining

whether a class action settlement is fair, reasonable, and adequate:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *see Newby v. Enron Corp.*, 394 F.3d

296, 301 (5th Cir. 2004).[6]

For the reasons discussed herein, the proposed Settlement readily meets Rule 23(e)(2)'s

requirements, as well as the criteria set forth in *Reed*. As such, final approval is warranted.

### B.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) directs courts to consider whether lead plaintiff and lead counsel have

---

[6] The factors set forth in Rule 23(e)(2), added by amendment effective December 1, 2018, were not intended to "displace any factor" used by the Courts of Appeal to assess final settlement approval, but rather to focus on core concerns to guide the approval decision. *See* Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The factors in amended Rule 23(e)(2) are wholly consistent with the Fifth Circuit's *Reed* factors and each are addressed below.

4

adequately represented the class. *See* Fed. R. Civ. P. 23(e)(2)(A).

Here, Lead Plaintiff, a sophisticated institutional investor, vigorously litigated this Action on behalf of the Settlement Class for almost two years. *See Netsky v. Capstead Mortg. Corp.*, 2000 WL 964935, at *5 (N.D. Tex. July 12, 2000) ("Congress has expressed its preference for securities fraud litigation to be directed by large institutional investors"). Throughout, Lead Plaintiff's representatives regularly conferred with Lead Counsel and participated in all stages of the litigation. *See* ¶¶ 41, 43, 118, 122; Ex. 2 ¶¶ 3-6. Lead Plaintiff's representative also actively participated in the Parties' settlement negotiations, traveling to New York City and Dallas to attend both mediation sessions with Mr. Melnick in person. *See* ¶¶ 41, 43, 122; Ex. 2 ¶ 5.

Moreover, like all Settlement Class Members, Lead Plaintiff acquired shares of Reata common stock during the Class Period and was subject to the same allegedly untrue statements and omissions as other Settlement Class Members. As a result, its claims are typical of, and coextensive with, other Settlement Class Members' claims, and Lead Plaintiff's interest in maximizing its recovery from Defendants is, and has always been, directly aligned with those of the Settlement Class. *See Marcus v. J.C. Penney Co., Inc.*, No. 13 Civ. 736, 2016 WL 8604331, at *4 (E.D. Tex. Aug. 29, 2016), *report and recommendation adopted,* 2017 WL 907996 (E.D. Tex. Mar. 8, 2017) (lead plaintiff adequately represented class where he "committed to vigorously prosecuting th[e] litigation[,] . . . actively direct[ing] th[e] litigation and maximiz[ing] the recovery for the class").

Plaintiffs' Counsel have likewise adequately represented the Settlement Class. Plaintiffs' Counsel are highly experienced in securities litigation and have long and successful track records in such cases. *See* ¶ 96; Exs. 3-C, 4-C, & 5-C. As described in the Hume Declaration, Plaintiffs' Counsel vigorously pursued Settlement Class Members' claims in the Action by: (i) conducting

an extensive investigation into the facts and circumstances underlying the CAC's claims; (ii) drafting and filing the CAC; (iii) consulting with merits and damages experts; (iv) briefing Defendants' motion to dismiss; (v) engaging in months of hard-fought, arm's length settlement negotiations facilitated by Mr. Melnick, involving, among other things, two formal mediation sessions, the exchange of voluminous written submissions, and Plaintiffs' Counsel's review of over two million pages of non-public documents; and (vi) conducting additional confirmatory discovery, including a review of thousands of additional pages of non-public documents and interviews with Officer Defendants Huff and Meyer. *See* ¶¶ 5, 26-58, 97; Ex. 6 ¶¶ 4-13. As a result, Plaintiffs' Counsel were acutely aware of the strengths and weaknesses of the case prior to settling the Action. Accordingly, this factor weighs in favor of final approval.

### C.    The Settlement Was Negotiated at Arm's Length with No Fraud or Collusion

In determining whether to approve a class action settlement, courts in the Fifth Circuit next consider whether the settlement was negotiated at arm's length (*see* Fed. R. Civ. P. 23(e)(2)(B)), and whether there is any evidence of fraud or collusion. *See Reed*, 703 F.2d at 172.

Here, the settlement negotiations – which included the exchange of detailed written submissions and two formal mediation sessions – were conducted at arm's length by experienced counsel and were facilitated by Mr. Melnick, a highly respected mediator. *See* ¶¶ 5, 38-45, 96-98; Ex. 6 ¶¶ 4-11, 13. While the first mediation session ended without a settlement, the Parties agreed to continue their negotiations and the Reata Defendants agreed to produce extensive non-public documents to Lead Plaintiff. *See* ¶ 41; Ex. 6 ¶¶ 4, 7-8. Following Lead Plaintiff's review of those documents, the Parties attended a second mediation session, which culminated in an agreement to resolve the Action for $45,000,000, following Mr. Melnick's proposal to that effect. *See* ¶¶ 42-44; Ex. 6 ¶¶ 4, 11.

The extensive arm's length negotiations and involvement of an experienced mediator here demonstrate that the Settlement is procedurally fair and not the product of fraud or collusion. *See Billitteri v. Sec. Am., Inc.*, No. 11 Civ. 191, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (finding no fraud or collusion in settlement reached through diligent arm's length negotiations before a neutral mediator); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02 Civ. 1152, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (noting that "the settlement was not the result of improper dealings" where it "was obtained through formal mediation" before an experienced mediator); *see also* Ex. 6 ¶ 13 (Declaration of Mr. Melnick stating that the Parties' negotiations here were conducted in "good faith" and at "arm's length" and were both "professional" and "highly adversarial"). As such, this factor further supports final approval of the Settlement.

### D. The Settlement Is Adequate in Light of the Costs and Delays of Continued Litigation

Courts in the Fifth Circuit are also directed to consider (i) whether the proposed settlement is adequate in light of the "costs" and "delay" of trial and appeal (Fed. R. Civ. P. 23(e)(2)(C)(i)), and (ii) the complexity, expense, and likely duration of the litigation absent settlement. *See Reed*, 703 F.2d at 172. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (approving settlement where continued litigation would be "time consuming, and [i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years"); *In re Dell Inc., Sec. Litig.*, No. 06 Civ. 726, 2010 WL 2371834, at *7 (W.D. Tex. June 11, 2010), *aff'd,* 669 F.3d 632 (5th Cir. 2012) (because "[s]ecurities litigation on the whole is 'notoriously difficult and unpredictable[,]' . . . the complexity, expense, and likely duration of the

7

suit weighs in favor of approval of the settlement") (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

Here, prevailing on Defendants' pending motion to dismiss, completing fact and expert discovery, prevailing on a class certification motion (and a likely interlocutory appeal of any certification order), surviving Defendants' anticipated motion for summary judgment, prevailing on various *Daubert* motions and motions *in limine*, achieving a litigated verdict at trial, and sustaining that verdict in the inevitable appeals that would follow, would have been a tremendous undertaking requiring substantial additional time and expense. Defendants would have undoubtedly continued to contest numerous key issues, such as the falsity of their statements, scienter, loss causation, and damages. *See* ¶¶ 32-36, 64-75. To prevail on these issues, Lead Plaintiff and Lead Counsel would have had to (i) marshal substantial additional factual evidence regarding falsity and scienter, and (ii) present expert testimony to establish loss causation and damages. Although Lead Plaintiff and Lead Counsel were prepared to do so, it cannot be disputed that achieving a litigated verdict in the Action would have required an enormous investment of time and resources (and, as discussed at Point I.F, *infra*, would have carried a significant risk of a materially smaller recovery, or no recovery at all).

Moreover, even if Lead Plaintiff were to succeed at trial, it is virtually certain that Defendants would have made post-trial motions challenging the verdict and/or filed an appeal, further delaying resolution of the Action and any recovery by the Settlement Class. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *19 (N.D. Tex. Nov. 8, 2005) (granting final approval of settlement where, even "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief"). There was also a risk that any verdict in Lead Plaintiff's favor would later have been reversed by the trial court or

on appeal. *See*, *e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiffs and granting judgment for defendants as a matter of law), *aff'd*, 688 F. 3d 713 (11th Cir. 2012); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict for plaintiffs in securities action).

The Settlement provides a significant and immediate recovery of $45 million for Settlement Class Members without exposing them to these tremendous expenses, delays, and uncertainties. As such, this factor also supports final approval of the Settlement.

### E.    The Stage of the Proceedings, the Amount of Discovery Completed, and Lead Plaintiff and Lead Counsel's Investigation, Support Final Approval of the Settlement

Courts in this Circuit are also required to consider the stage of the proceedings and the amount of discovery completed when determining the adequacy of a class action settlement. *See Reed*, 703 F.2d at 172. When considering this factor, the key issue is not whether the parties have engaged in "formal discovery," *Jenkins*, 300 F.R.D. at 304, but whether they have obtained "sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed." *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05 Civ. 2165, 2009 WL 512081, at *12 (E.D. La. Mar. 2, 2009).

Here, the Settlement was reached only after the Parties engaged in extensive and comprehensive litigation and settlement efforts over the course of nearly two years, including the production and review of over two million pages of documents and Lead Counsel's interviews with Reata's key executives. *See* ¶¶ 5, 26-49; *see also* Points I.B & I.C, *supra*. Consequently, the Parties had "a full understanding of the legal and factual issues surrounding this case," including the strengths and weaknesses of Settlement Class Members' claims, when they negotiated and

evaluated the proposed Settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). This further supports final approval of the Settlement. *See Billitteri*, 2011 WL 3586217, at *11 (approving settlement where litigation was ongoing "for approximately two years" and, although there "ha[d] not been a full range of discovery," counsel had reviewed "millions of pages of documents" and deposed "key players" and thus, the parties "possess[ed] ample information with which to evaluate the merits of the[ir] competing positions") (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12 Civ. 1609, 2015 WL 965693, at *8 (W.D. La. Mar. 3, 2015) (approving settlement reached "[a]fter two years of intense litigation," including briefing on defendant's motion to dismiss and lead plaintiff's review of "over 137,000 pages of documents").

### F. The Settlement Is within a Reasonable Range of Recovery

Rule 23(e)(2)(C)(i) also directs courts to consider whether the relief provided to the class is adequate in light of the risks of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). Similarly, the Fifth Circuit's decision in *Reed* requires courts to consider whether the settlement amount "fall[s] within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Billitteri*, 2011 WL 3586217, at *12 (quoting *Klein*, 705 F. Supp. 2d at 656); *see also Reed*, 703 F.2d at 172. In evaluating these factors, courts must determine "whether the settlement is 'pegged at a [fair] point in the range'" "of possible damages that could be recovered at trial . . . in light of the 'likelihood of prevailing at trial and other factors.'" *Celeste Neely*, No. 21 Civ. 307, 2022 WL 17736350, at *7 (E.D. Tex. Dec. 16, 2022) (quoting *Maher*, 714 F.2d at 460). Here, Defendants' agreement to settle the Action for $45 million is well within a reasonable range of recovery for several reasons.

*First*, the Settlement is over three times larger than the median settlement value in securities

class actions settled in 2022 and 2023, reported by Cornerstone Research and NERA Economic Consulting ("NERA") to be $13 million and $14 million, respectively. *See* Ex. 9 at 1; Ex. 8 at 20; *see also* ¶ 61.

*Second*, according to NERA, the median settlement between 2014 and 2023 in securities cases with investor losses between $1 billion and $4.999 billion recovered 1.3% of investor losses. *See* Ex. 8 at 25. The $45 million Settlement here represents *over three times that amount*, equating to 4% of the $1.138 billion in class-wide damages that Lead Plaintiff and Lead Counsel believe could have been recovered in the Action in the event of a trial victory that withstood subsequent appeals. *See* ¶ 60. Notably, the $1.138 billion damages estimate properly accounts for known litigation risks, including (i) Defendants' anticipated argument that the alleged August 2020 and August 2021 corrective disclosures did not cause any claimed losses or otherwise directly relate to the alleged fraud, and (ii) Lead Counsel's assessment, following its review of Reata's document productions and interviews with Officer Defendants Huff and Meyer, that falsity and/or scienter would likely be difficult to prove with respect to Defendants' pre-October 2018 misstatements and omissions. *See id.*[7]

*Third*, the Settlement is clearly reasonable when viewed in light of the numerous risks of continued litigation that could have precluded securing *any recovery at all*, let alone a recovery greater than the Settlement amount. *See Slipchenko v. Brunel Energy, Inc.*, No. 11 Civ. 1465, 2015 WL 338358, at *11 (S.D. Tex. Jan. 23, 2015); *see also In re Heartland*, 851 F. Supp. 2d at 1067.

---

[7] Even if liability could have been established with respect to *all* claims for the *entirety* of the Class Period, Lead Plaintiff's consulting damages expert estimates that maximum aggregate damages potentially recoverable under the Exchange Act would have been approximately $2.392 billion. *See* ¶ 60 n.5. The Settlement represents approximately 1.9% of this amount, which is still more than the median recovery of 1.3% obtained in securities class actions involving similar damages amounts. *See* Ex. 8 at 25.

Indeed, the Settlement was reached at a moment of substantial uncertainty, with Defendants' motion to dismiss pending. In their motion, Defendants vigorously argued that they made no misrepresentations about the CARDINAL trial's four-week washout period and, even if they did, they did not do so with scienter. *See* ECF No. 59 at 23-50. Defendants also denied any duty to disclose the FDA's purported concerns, arguing that any such concerns (i) did not relate to the adequacy of CARDINAL's four-week washout period, and (ii) were, in any event, mere interim feedback expressed during ordinary back-and-forth between Reata and the FDA. *See id.* at 25-28. Defendants further argued that the CAC's allegations were not pleaded with sufficient particularity because the CAC allegedly failed to specify, among other things, the dates on which the FDA conveyed its alleged concerns to Reata. *See id.* at 37-42. Although Lead Plaintiff and Lead Counsel believed in their prospects of success on the motion, success was far from certain. An adverse decision could have drastically shortened the Class Period, or it could have resulted in the Action's dismissal in part, or in its entirety. *See* ¶¶ 64-65.

Moreover, even if Lead Plaintiff defeated Defendants' motion to dismiss, it still faced class certification and summary judgment, as well as trial and appeals. Lead Plaintiff would have faced considerable difficulty proving falsity and scienter at both the summary judgment stage and at trial. For one, as noted above, the non-public documents produced by the Reata Defendants, as well as the information obtained during Lead Counsel's interviews with Officer Defendants Huff and Meyer, plausibly suggested an absence of falsity and/or scienter with respect to Defendants' pre-October 2018 statements and omissions. *See* ¶¶ 60, 66. Moreover, Defendants would have continued to maintain that the FDA did not express any concerns about the adequacy of CARDINAL's four-week washout period, not just during the period prior to October 2018, but at any time prior to the FDA Briefing Book's publication in December 2021. *See* ¶¶ 33, 64, 66.

12

Because discovery from the FDA – the only other party to the alleged communications with Reata – was unlikely to be forthcoming, Lead Plaintiff would have had to rely almost entirely on documents and testimony from Reata's own witnesses to overcome Defendants' arguments and prove that Defendants' Class Period statements and omissions were materially false and/or misleading, and that Defendants acted with the requisite scienter. *See* ¶ 67. This would have been challenging, to say the least.

Lead Plaintiff would also have faced considerable risks in proving loss causation and damages. For example, Defendants would likely have argued that the decline in Reata's stock price on one or more of the corrective disclosure dates was caused by the disclosure of information unrelated to the alleged fraud. *See* ¶ 71. Thus, any stock price decline flowing from the alleged fraud would need to be disaggregated from other confounding news. *See id.* As discussed above, Defendants would also likely have argued that the alleged corrective disclosures in August 2020 and August 2021 were not directly related to the FDA's alleged concerns over the adequacy of CARDINAL's four-week washout period but were instead related to concerns about data collected *prior* to the end of the four-week washout period. *See* ¶¶ 60, 71. In making and defending these arguments at trial, the Parties would have had to rely heavily on expert testimony. The result would have been an unpredictable and "protracted battle of the experts." *Celeste Neely*, 2022 WL 17736350, at *7; *see In re OCA*, 2009 WL 512081, at *14 ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").

Given these risks and uncertainties, the Settlement, which provides for a substantial, definite, and immediate recovery for the Settlement Class, is more than reasonable. Accordingly, this factor further weighs in favor of final approval of the Settlement. *See*, *e.g.*, *In re OCA*, 2009 WL 512081, at *13 (settlement approval favored where plaintiffs faced substantial risks in

establishing securities law violations); *Schwartz*, 2005 WL 3148350, at *18 ("plaintiffs' uncertain prospects of success through continued litigation" supported settlement approval).

> ### G.    Lead Counsel, Lead Plaintiff, and Settlement Class Members Support Final Approval

In assessing a class action settlement, courts in this Circuit must also consider "the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

Here, Lead Counsel conducted a thorough investigation into the claims asserted in the Action and, after almost two years of intense litigation and settlement negotiations, possessed a firm understanding of the strengths and risks attendant to these claims. Based on this understanding, as well as Lead Counsel's substantial experience litigating complex securities class actions (*see* Point I.B, *supra*), Lead Counsel concluded that the Settlement is fair, reasonable, and adequate. *See* ¶¶ 4, 78. This determination is to be given "significant weight." *Marcus v. J.C. Penney Co., Inc.*, No. 13 Civ. 736, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018); *see Schwartz*, 2005 WL 3148350, at *21 ("[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of [the] case.").

Lead Plaintiff also fully endorses the Settlement. *See* ¶ 79; Ex. 2 ¶¶ 7, 13. Lead Plaintiff supervised Plaintiffs' Counsel throughout the litigation, attended and actively participated in the mediation sessions with Mr. Melnick, and was kept apprised of all litigation and settlement negotiation efforts. *See* ¶¶ 41, 43, 118, 122; Ex. 2 ¶¶ 3-6. "[T]he recommendation of Lead Plaintiff, a sophisticated institutional investor, also supports the fairness of the Settlement." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014).

Finally, the positive response of Settlement Class Members to date supports final approval of the Settlement. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), mailed copies of the Notice Packet to potential Settlement Class Members and nominees starting on December 26, 2023. *See* ¶ 54; Ex. 1 ¶¶ 5-7. The Notice set forth the Settlement's terms and informed Settlement Class Members of their right to exclude themselves from the Settlement Class or to object to the Settlement and their deadline for doing so. *See* ¶ 53; Ex. 1-A ¶¶ 1-2, 23, 28-37, 74-86. While the March 8, 2024 deadline has not yet passed, to date, there have been no objections to the Settlement or Plan of Allocation and no requests for exclusion from the Settlement Class. *See* ¶¶ 58, 86; Ex. 1 ¶¶ 20, 22. This further supports final approval of the Settlement. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 150 (E.D. La. 2013) ("[O]ne indication of the fairness of a settlement is the lack of or small number of objections.").[8]

### H.     The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval

Rule 23(e)(2) also requires courts to consider: (i) the effectiveness of the proposed method of distributing relief to the class; (ii) the terms of any proposed attorneys' fee award; (iii) any agreements made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & 23(e)(2)(D). These factors all weigh in favor of final approval of the Settlement here.

#### 1.     The Proposed Method for Distributing the Settlement Proceeds Is Effective

As set forth in the Notice, the Settlement proceeds will be distributed to Settlement Class Members who submit eligible Claim Forms with the required documentation to Epiq. *See* Ex. 1-A ¶ 38. Epiq will review and process all Claim Forms timely received, provide claimants with an

---

[8] Lead Plaintiff will file reply papers on March 22, 2024, addressing any future requests for exclusion or objections.

opportunity to cure any deficiency or request the Court's review of the denial of their claim, and will ultimately mail or wire claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation.[9] *See* Ex. 1-A ¶¶ 49-72. If there is any balance remaining (whether by reason of tax refunds, uncashed checks, or otherwise) after at least nine months from the date of the initial distribution of the Net Settlement Fund, Epiq will, if feasible and economical, redistribute the balance among eligible claimants who have cashed their checks. *See id.* ¶ 71. These redistributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. *See id.* Any balance that remains in the Net Settlement Fund at that point will be contributed to a non-sectarian, not-for-profit organization approved by the Court. *See id.*

This type of claims processing is standard in securities class actions and has long been used and found to be effective. *See*, *e.g.*, *In re OCA*, 2009 WL 512081, at *6; *In re Dell*, 2010 WL 2371834, at *10. As such, this factor weighs in favor of final approval of the Settlement.

### 2. The Requested Fees and Expenses Are Fair and Reasonable

Lead Counsel has filed a motion for an award of attorneys' fees and Litigation Expenses concurrently herewith (the "Fee and Expense Application"). The Fee and Expense Application requests attorneys' fees in the amount of 30% of the Settlement Fund, which is consistent with attorneys' fee awards approved in comparable securities class actions and reasonable in light of Plaintiffs' Counsel's extensive efforts and the substantial risks inherent in this litigation. *See* ¶¶ 87-112. Lead Counsel's Fee and Expense Application also includes a request for reimbursement of $204,323.08 in Litigation Expenses incurred by Plaintiffs' Counsel and $10,000 for Lead Plaintiff's costs. *See* ¶¶ 87, 113-17, 121-22. Both the requested 30% fee and the repayment of Litigation Expenses are authorized by and made pursuant to an agreement between Lead Counsel

---

[9] The Settlement is not a claims-made settlement. If the Settlement is approved, Defendants will have no right to the return of any portion of Settlement based on the number or value of claims submitted. *See* Stipulation ¶ 13.

and Lead Plaintiff that was reached at the outset of the Action. *See* ¶ 91.

Pursuant to the terms of the Stipulation, and as is standard in securities class actions, attorneys' fees and Litigation Expenses will be paid upon any such award granted by the Court and shall be reimbursed to the Settlement Fund if the award is reduced or reversed in any subsequent legal proceeding. *See* Stipulation ¶ 16. Most importantly, approval of the requested attorneys' fee award is separate from approval of the Settlement, and neither Lead Plaintiff nor Plaintiffs' Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to the award of attorneys' fees or Litigation Expenses. *See id.* Accordingly, this factor also supports final approval of the Settlement.

### 3. The Supplemental Agreement Does Not Affect the Settlement's Fairness

As noted in the Preliminary Approval Motion, the Parties here entered into a confidential Supplemental Agreement that sets forth the conditions under which Defendants would be able to terminate the Settlement if the number of Settlement Class Members who request exclusion from the Settlement Class reaches a certain threshold (the "Termination Threshold"). This type of agreement is standard in securities class actions and is routinely kept confidential to prevent potential opt-outs from using the Termination Threshold as leverage. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys*., No. 16 Civ. 1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). The Supplemental Agreement has no negative impact on the Settlement's fairness. *See*, *e.g.*, *Erica P. John Fund*, 2018 WL 1942227, at *5 (granting final approval of securities settlement that included a similar agreement).[10] Accordingly, this factor also weighs in favor of final approval of the

---

[10] In addition, the Parties executed a Term Sheet prior to the Stipulation that memorialized all material terms of their agreement in principle to resolve the Action. *See* ¶ 46. The Term Sheet has now been superseded by the Stipulation and has no impact on the Settlement's fairness.

Settlement.

### 4.    The Settlement Treats Settlement Class Members Equitably

The proposed Settlement treats Settlement Class Members equitably relative to one another and does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(D).[11] Rather, all Settlement Class Members, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund based on the same formula under the Plan of Allocation. As discussed at Point II, *infra*, the Plan of Allocation provides a fair and equitable method for allocating the Net Settlement Fund amongst Settlement Class Members. As such, this factor also supports final approval of the Settlement.

## II.   The Plan of Allocation Is Fair, Reasonable, and Adequate and Should Be Approved

In deciding whether to approve a proposed plan of allocation, courts consider whether the plan is "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *see also Schwartz*, 2005 WL 3148350, at *23 ("Approval of a plan of allocation of settlement proceeds . . . is governed by the same standard of fairness, reasonableness and adequacy applicable to approval of the settlement as a whole."). A plan of allocation need not be perfect to be approved. Rather, "[t]he allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Dell*, 2010 WL 2371834, at *10.

Here, the proposed Plan of Allocation, prepared by Lead Counsel with the assistance of

---

[11] In connection with Lead Counsel's Fee and Expense Application, filed herewith, Lead Plaintiff seeks reimbursement of its reasonable costs and expenses directly related to its participation in the Action. *See* ¶¶ 87, 121-22; Ex. 2 ¶¶ 1, 11-12. Reimbursement of Lead Plaintiff's costs and expenses is explicitly contemplated by the PSLRA and does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (limiting a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also providing that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

Lead Plaintiff's consulting damages expert, provides a fair and reasonable method for allocating the Net Settlement Fund amongst Settlement Class Members who suffered losses resulting from Defendants' alleged misconduct. *See Schwartz*, 2005 WL 3148350, at *8 (approving plan of allocation "formulated by Lead Counsel with assistance from its materiality and damages experts"). It is designed to equitably distribute the Settlement proceeds amongst Settlement Class Members based on when they purchased, acquired, and/or sold their Reata common stock, including (i) whether they purchased their shares in an offering or on the open market, (ii) whether their shares were held through an alleged corrective disclosure, (iii) whether their shares were held through or sold during the statutory 90-day lookback period (*see* 15 U.S.C. § 78u-4(e)), and (iv) the value of their shares when they were sold or held.

Under the Plan of Allocation, Epiq will calculate a "Recognized Loss Amount" for each purchase or acquisition of Reata common stock during the Settlement Class Period listed in a claimant's Claim Form and for which adequate documentation has been provided. *See* ¶¶ 80-85. The sum of each claimant's Recognized Loss Amounts will be the claimant's "Recognized Claim." ¶ 85. Epiq will allocate the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See id.*

The formulas for calculating claimants' Recognized Loss Amounts are based on the estimated amount of artificial price inflation in Reata common stock over the course of the Settlement Class Period allegedly caused by Defendants' alleged misstatements and omissions. *See* ¶ 82. Lead Plaintiff's damages expert calculated the amount of estimated artificial inflation by considering the price declines associated with the alleged corrective disclosures, adjusted to (i) eliminate the effects attributable to general market or industry conditions, and (ii) account for Lead Counsel's assessment of potential loss causation defenses, including the potential argument,

discussed at Point I.F, *supra*, that the August 2020 and August 2021 corrective disclosures did not cause any claimed damages or otherwise directly relate to the alleged fraud. *See id.*

For claimants who purchased Reata common stock pursuant and/or traceable to the 2019 or 2020 Offerings, the Plan of Allocation provides for an enhancement to their Recognized Loss Amounts with respect to those shares to account for the fact that a *prima facie* Section 11 claim does not require proof of scienter, reliance, or loss causation. *See* ¶ 83; *see also In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, No. 01 Civ. 3624, 2008 WL 4178151, at *5 (S.D. Tex. Sept. 8, 2008) (plan of allocation that accounted for "interclass distinctions based on the relative strength and weaknesses of the different claims" was "fair, adequate, and reasonable").

The Plan also accounts for Lead Counsel's conclusion, discussed at Point I.F, *supra*, that claims based on pre-October 23, 2018 statements and omissions involve difficulties of proof, by applying an appropriate downward adjustment to claimants' Recognized Loss Amounts for shares purchased prior to that date. *See* ¶ 84; *see also In re Waste Mgmt., Inc. Secs. Litig.*, No. 99 Civ. 2183, 2002 WL 35644013, at *23 (S.D. Tex. May 10, 2002) (approving plan of allocation that "applied weighting factors to account for the relative strength of claims throughout the Class Period"); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (approving allocation plan that "sensibly ma[de] interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims").

Consequently, the Plan of Allocation ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained in relation to their respective litigation risks. It also ensures that eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. Accordingly, the Plan of Allocation provides a fair and reasonable method for allocating the Net Settlement Fund amongst Settlement Class

Members and thus, warrants final approval. *See In re OCA*, 2009 WL 512081, at *6; *In re Dell*, 2010 WL 2371834, at *10.[12]

## III.    Notice to the Settlement Class Satisfied Rule 23 and Due Process

Rule 23(c)(2)(B) requires that notice of a class action settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Supreme Court has held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) ("[A] settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'"). Here, both the substance of the Notice and the method of its dissemination easily satisfied these standards.

The Court-approved Notice advised recipients of all information required by Rule 23(c)(2)(B) including, *inter alia*: (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the Settlement Class's claims, issues, and defenses; (iv) the Settlement's terms; (v) the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement was fair, reasonable, and adequate; (vi) the procedures for requesting exclusion from the Settlement Class or objecting to the Settlement; (vii) the procedures for entering an appearance through an attorney; (viii) the procedures for submitting a Claim Form; (ix) the binding effect of a class judgment; (x) the proposed plan for allocating the net proceeds of the Settlement; (xi) the date, time, and place of the Settlement Hearing; and (xii) how to obtain additional information regarding the Settlement. *See* Fed. R. Civ. P. 23(c)(2)(B).

---

[12] To date, no objections to the proposed Plan of Allocation have been received. *See* ¶¶ 58, 86; Ex. 1 ¶ 22.

The Notice also satisfied the PSLRA's requirements by stating: (i) the Settlement amount determined in the aggregate and on an average per share basis; (ii) that the Parties did not agree on the average amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intended to apply for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons why the Parties were proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7).

In accordance with the Court's Preliminary Approval Order, Epiq began mailing copies of the Notice Packet to potential Settlement Class Members and nominees on December 26, 2023. *See* ¶ 54; Ex. 1 ¶¶ 5-7. As of February 21, 2024, Epiq had disseminated 30,582 copies of the Notice Packet to potential Settlement Class Members and nominees. *See* ¶ 54; Ex. 1 ¶ 10. Epiq also caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over the *PR Newswire* on January 8, 2024, and Epiq maintains and updates, as required, a website and toll-free telephone number dedicated to the Settlement. *See* ¶¶ 55-57; Ex. 1 ¶¶ 12-18.

This combination of individual mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by the publication of notice in an appropriate, widely circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances" and easily satisfied the requirements of Rule 23, due process, and all other applicable laws and rules. *In re OCA, Inc. Sec. & Derivatives Litig.*, No. 05 Civ. 2165, 2008 WL 4681369, at *14-16 (E.D. La. Oct. 17, 2008) (notice by publication and mail appropriate); *Schwartz*, 2005 WL 3148350, at *10-11 (same).

## IV.    The Court Should Affirm Certification of the Settlement Class for Settlement Purposes

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes under Federal Rules of Civil Procedure 23(a) and (b)(3). *See* ECF No. 76 ¶¶ 1-3. Since

that time, there have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiff's Preliminary Approval Motion (ECF No. 74), which are incorporated herein by reference, Lead Plaintiff respectfully requests that the Court affirm its certification of the Settlement Class for settlement purposes under Rules 23(a) and (b)(3).

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

Dated: February 23, 2024                     Respectfully Submitted,


                                             **STECKLER WAYNE & LOVE PLLC**

                                             */s/ Bruce W. Steckler*
                                             Bruce W. Steckler
                                             State Bar No. 00785039
                                             Austin P. Smith
                                             State Bar No. 24102506
                                             12720 Hillcrest Road, Suite 1045
                                             Dallas, TX 75230
                                             Telephone: 972-387-4040
                                             Facsimile: 972-387-4041
                                             Email: bruce@swclaw.com
                                                       austin@swclaw.com

                                             *Local Counsel for Lead Plaintiff and the Proposed Settlement Class*


                                             **KIRBY McINERNEY LLP**
                                             Daniel Hume (admitted *pro hac vice*)
                                             Meghan J. Summers (admitted *pro hac vice*)
                                             Ira M. Press (admitted *pro hac vice*)
                                             250 Park Avenue, Suite 820
                                             New York, NY 10177
                                             Telephone: 212-371-6600
                                             Facsimile: 212-751-2540
                                             Email: dhume@kmllp.com

msummers@kmllp.com
ipress@kmllp.com

*Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*


**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Additional Counsel for the Proposed Settlement Class*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/  Bruce Steckler*
Bruce Steckler