EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>REATA PHARMACEUTICALS, INC., *et al.*,<br><br>Defendants. | Case No. 4:21-cv-00987-ALM LEAD<br><br><u>CLASS ACTION</u> |

**DECLARATION OF JED D. MELNICK IN SUPPORT OF**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

I, Jed D. Melnick, declare as follows:

1.     I was selected by Lead Plaintiff[1] and Defendants and assigned by the Court (*see* ECF No. 67) to serve as the Mediator in the above-captioned action (the "Action"). I make this declaration based on personal knowledge and am competent to testify to the matters set forth herein. The Parties have consented to my submission of this declaration regarding the negotiations which led to the proposed Settlement.

2.     As discussed below, I believe that the Settlement in this Action for the total amount of $45 million in cash – after a rigorous mediation process – represents a well-reasoned and sound resolution of the complicated and uncertain claims. The Court will make determinations as to the "fairness" of the Settlement under applicable legal standards. From a mediator's perspective, however, I recommend the proposed Settlement as reasonable, arm's length, and consistent with the risks and potential rewards of the claims asserted in the Action.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated October 30, 2023. *See* ECF No. 74-2.

3.      As a mediator associated with JAMS, I have mediated over 1,000 disputes, including complex securities class actions and shareholder derivative actions, published articles on mediation, founded a nationally ranked dispute resolution journal, and taught young mediators. In 2023, I was included on the Chambers USA "National Mediators" list, and I have twice been selected by the National Law Journal as an ADR Champion.

4.      As detailed below, I oversaw two rounds of settlement negotiations in this Action. The first mediation session, in April 2023, culminated in the Reata Defendants' agreement to produce non-public communications between Reata and the FDA, with the goal of moving the Parties closer to an agreeable settlement figure. The second mediation session, in July 2023, attempted to resolve the claims between the Parties. Shortly after the second mediation session, the Parties reached a global agreement to settle the claims on behalf of the Settlement Class for $45 million.

5.      Both mediation sessions included a thorough exchange of the Parties' views and arguments in support of their respective positions. The Parties also exchanged voluminous written submissions prior to each session and participated in several telephonic and Zoom conferences with me during the course of the negotiation process.

**The April 2023 Mediation Session**

6.      In advance of the April 2023 mediation, Lead Plaintiff and the Reata Defendants exchanged and submitted confidential mediation statements. The mediation statements contained the Parties' respective views on liability and damages.

7.      On April 25, 2023, the Parties and their counsel participated in a mediation session that proceeded before me with both in-person and remote attendees. The participants included: (i) Lead Counsel, Kirby McInerney LLP ("Kirby McInerney"); (ii) additional Plaintiffs' Counsel,

2

Glancy, Prongay & Murray LLP; (iii) Lead Plaintiff's representative; (iv) Counsel for the Reata Defendants, Davis Polk & Wardwell LLP ("Davis Polk"); (v) Defendants' representatives (including Reata's Chief Legal Officer, Chief Executive Officer, and Chief Innovation Officer); and (vi) representatives from Defendants' liability insurance carriers. During the session, the Parties made presentations to me, and we discussed the merits of the case, including liability and damages. Settlement numbers were discussed, but the session ended without agreement.

8.    Although the first mediation session ended without a settlement agreement, counsel for the Reata Defendants proposed to produce non-public communications between Reata and the FDA, with the goal of bringing the Parties closer to a global resolution. Over the next few months, the Reata Defendants provided Lead Counsel with multiple sets of document productions, which were reviewed by Lead Plaintiff and Lead Counsel in advance of the second mediation session.

**The July 2023 Conferences and Mediation Session**

9.    On July 11, 2023, the Reata Defendants submitted a supplemental written mediation statement, which set forth their views on liability in light of their recent document productions. On July 17, 2023, I conducted a telephone call with Lead Counsel to discuss the Reata Defendants' written submission. I also conferred directly with counsel for the Reata Defendants via email on July 22 and 23, 2023.

10.    On July 18, 2023, Lead Plaintiff submitted its supplemental written mediation statement, which discussed Lead Plaintiff's views on liability in light of the Reata Defendants' document productions. The following day, I held a Zoom session with Lead Counsel and counsel for the Reata Defendants, during which they further discussed their respective arguments and positions on liability and damages.

11.      On July 24, 2023, I conducted a second, formal mediation session between the Parties, who attended both in-person and by videoconference. Participants in the mediation included Kirby McInerney, Lead Plaintiff's representative, Davis Polk, Defendants' representatives (including Reata's Chief Executive Officer), and representatives from Defendants' insurance carriers. The Parties spent the entirety of the day in vigorous settlement negotiations, but ultimately were unsuccessful in negotiating a mutually acceptable settlement.

12.      Thereafter, following additional settlement discussions with my oversight, I issued a mediator's recommendation that Lead Plaintiff and Defendants agree to settle the Action for $45 million with respect to the Settlement Class (the "Settlement"). The Parties agreed to my mediator's recommendation.

13.      The proposed Settlement is the result of extended good-faith, arm's length negotiations between the Parties. As stated above, the Parties exchanged multiple, voluminous written submissions, participated in two hybrid mediation sessions before me on April 25, 2023 and July 24, 2023, and also participated in multiple phone and Zoom conferences with me in July 2023. During those conferences and mediation sessions, both sides made presentations addressing key issues in the case and advanced aggressive positions on behalf of their clients. While I am bound by confidentiality regarding the content of the discussions at the mediation, I can say that the agreements and positions asserted by all involved were plainly the result of detailed analysis and hard work by competent counsel who are highly experienced in the field of securities litigation. Over the course of the negotiations, I encouraged each side to take a hard look at the merits and value of the claims and defenses in the Action. While the negotiations were professional, they were also highly adversarial. While ultimately a decision for the Court, based on my understanding of

the issues and risks in the Action, it is my opinion that the $45 million Settlement for the benefit

of the Settlement Class is fair, reasonable, and adequate under all of the circumstances.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed this  22  day of  January , 2024.

*Jed D. Melnick*

_____

Jed D. Melnick

5