**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, *et al.*, <br><br>                       Plaintiffs, <br><br>    v. <br><br> REATA PHARMACEUTICALS, INC., *et al.* <br><br>                     Defendants. | Case No. 4:21-cv-00987-ALM <br> LEAD <br><br> <u>CLASS ACTION</u> |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND LITIGATION EXPENSES AND**
<u>**MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT........................................................................................................................4

I.    Lead Counsel's Request for Attorneys' Fees Is Reasonable and Should
      Be Approved ..............................................................................................................4

      A.    Counsel Is Entitled to an Award of Attorneys' Fees from the
            Common Fund ................................................................................................ 4

      B.    The Requested Attorneys' Fees Are Reasonable under Either
            the Percentage-of-the-Fund Method or the Lodestar Method............................... 5

            1.    The Fee Request Is Reasonable under the Percentage Method,
                  Which Is the Preferred Method for Assessing Fee Requests .....................5

            2.    The Fee Request Is Also Reasonable under the Lodestar
                  Method ..................................................................................................10

      C.    The *Johnson* Factors Confirm the Reasonableness of the Requested
            Fee................................................................................................................. 13

            1.    The Time and Labor Required .................................................................13

            2.    The Novelty and Difficulty of the Issues................................................15

            3.    The Skill Required to Adequately Perform the Legal Services
                  and the Experience, Reputation, and Ability of Plaintiffs'
                  Counsel .................................................................................................16

            4.    Preclusion of Other Employment.............................................................17

            5.    The Customary Fee and Awards in Similar Cases ...................................17

            6.    The Contingent Nature of the Fee ...........................................................17

            7.    The Amount Involved and the Results Achieved .....................................18

            8.    The Undesirability of the Case................................................................19

            9.    The Nature and Length of the Relationship with the Client ....................20

D.     Other Factors Considered by Courts Further Support the Requested Fee .......................................................................................... 21

    1.    Public Policy Considerations Support the Requested Fee ........................21

    2.    Lead Plaintiff Approves and Supports the Requested Fee.......................21

    3.    The Settlement Class's Reaction to Date Supports the Requested Fee ...................................................................................22

II.    The Requested Litigation Expenses Are Reasonable and Were Necessary to Achieve the Benefit Obtained ..................................................................22

III.    Lead Plaintiff Should Be Awarded its Reasonable Costs under the PSLRA ....................23

CONCLUSION...................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
No. 17 Civ. 3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) .............................................. 7, 8

*In re Alamosa Holdings, Inc.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) ....................................................................................... 19

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ..................................................................................................... 19

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
No. 20 MC 00023, 2021 WL 1353756 (S.D.N.Y. Apr. 12, 2021) ...............................................11

*Aperia Sols., Inc. v. Evance, Inc.*,
No. 18 Civ. 3276, 2021 WL 3710563 (N.D. Tex. Aug. 19, 2021) ...............................................11

*In re Arthrocare Corp. Sec. Litig.*,
No. 08 Civ. 574, 2012 WL 12951371 (W.D. Tex. June 4, 2012) ......................................... 6, 25

*Barrera v. Nat'l Crane Corp.*,
No. 10 Civ. 0196, 2012 WL 242828 (W.D. Tex. Jan. 25, 2012) .................................................. 8

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ...................................................................................................... 4

*Batchelder v. Kerr-McGee Corp.*,
246 F. Supp. 2d 525 (N.D. Miss. 2003) ...................................................................................... 6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................................. 5, 21

*Billitteri v. Secs. Am., Inc.*,
No. 10 MDL 2145, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ..................................... 18, 20

*In re Bear Stearns Cos., Inc. Secs., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................................ 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................................... 4

*Braud v. Transp. Serv. Co. of Ill.*,
    Nos. 05 Civ. 1898, 05 Civ. 1977, 05 Civ. 5557, 06 Civ. 0891,
    2010 WL 3283398 (E.D. La. Aug. 17, 2010) ............................................................... 20

*Brown v. Phillips Petrol. Co.*,
    838 F.2d 451 (10th Cir. 1988) ..................................................................................... 6

*Buettgen v. Harless*,
    No. 09 Civ. 00791, 2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ......................... 24

*Burback v. Oblon*,
    No. 20 Civ. 946, 2021 WL 4477607 (E.D. Tex. Sept. 30, 2021) ............................... 19

*Burford v. Cargill, Inc.*,
    No. 05 Civ. 0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012)........................... *passim*

*In re Cabletron Sys., Inc. Sec. Litig.*,
    239 F.R.D. 30 (D.N.H. 2006) ...................................................................................... 8

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ..................................................................................... 6

*Campton v. Ignite Rest. Grp., Inc.*,
    No. 12 Civ. 2196, 2015 WL 12766537 (S.D. Tex. June 5, 2015) ............................... 8

*Celeste Neely*,
    No. 21 Civ. 307, 2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ............................. 12

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 78595, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................. 19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................................................... 17

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. 12 Civ. 1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015)....................... 7, 10, 12

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
    No. 15 Civ. 00374, 2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ............................. 21

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978) ................................................................................ 15

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
    No. 14 Civ. 3428, 2019 WL 6043440 (S.D. Tex. Feb. 13, 2019).............................. 24

*Collins v. Sanderson Farms, Inc.*,
    568 F. Supp. 2d 714 (E.D. La. 2008) .......................................................................... 7

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997) ................................................................. 7, 8, 12

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
    504 F. Supp. 2d 151 (N.D. Tex. 2007) ...................................................................... 19

*Dawes v. Imperial Sugar Co.*,
    975 F. Supp. 2d 666 (S.D. Tex. 2013) ...................................................................... 19

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................ 12

*In re Dell, Inc.*,
    No. 06 Civ. 726, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ................................. 9

*Destefano v. Zynga, Inc.*,
    No. 12 Civ 4007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................11

*Di Giacomo v. Plains All Am. Pipeline*,
    No. 99 Civ 4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ....................... 8, 12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................................................10, 11, 12, 19

*Eric B. v. Comm'r of Soc. Sec.*,
    No. 17 Civ. 0083, 2019 WL 7546622 (N.D. Tex. Dec. 18, 2019) ...............................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 02 Civ 1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...................... *passim*

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
    No. 16 Civ. 0635, 2019 WL 7879735 (N.D. Tex. Feb. 27, 2019) ............................. 12

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15 Civ. 4883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................11

*In re EZCORP, Inc. Sec. Litig.*,
    No. 15 Civ. 00608, 2019 WL 6649017 (W.D. Tex. Dec. 6, 2019) .............................. 8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................. 14

*Faircloth v. Certified Fin. Inc.*,
    No. 99 Civ 3097, 2001 WL 527489 (E.D. La. May 16, 2001) .................................... 8

*Fairway Med. Ctr., L.L.C. v. McGowan Enters., Inc.*,
    No. 16 Civ. 3782, 2018 WL 1479222 (E.D. La. Mar. 27, 2018) ................................ 8

*In re Flint Water Cases*,
   583 F. Supp. 3d 911 (E.D. Mich. 2022) ........................................................... 9

*In re Franklin Bank Corp. Sec. Litig.*,
   782 F. Supp. 2d 365 (S.D. Tex. 2011) ........................................................... 19

*Frost v. Oil States Energy Servs.*,
   No. 15 Civ. 1100, 2015 WL 12780763 (S.D. Tex. Nov. 19, 2015) ........................................... 8

*Garza v. Sporting Goods Props., Inc.*,
   No. 93 Civ. 108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ...................................................... 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..................................................................... 6

*Glock v. FTS Int'l, Inc.*,
   No. 20 Civ. 03928, 2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) ........................................... 12

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ..................................................................... 4

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ..................................................................... 6

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................................................... 10

*Hopson v. Chase Home Fin., L.L.C.*,
   605 F. App'x 267 (5th Cir. 2015) ........................................................... 20

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ............................................................. 15

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 09 Civ. 00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................... 19

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ....................................................... 4, 7, 8, 21

*Johnson v. Ga. Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ..................................................................... *passim*

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ..................................................................... 6

*Kapps v. Torch Offshore, Inc.*,
   379 F.3d 207 (5th Cir. 2004) ..................................................................... 20

*Kemp v. Unum Life Ins. Co. of Am.*,
    No. 14 Civ. 0944, 2015 WL 8526689 (E.D. La. Dec. 11, 2015) ............................................ 7, 8

*In re Key Energy Servs., Inc. Sec. Litig.*,
    166 F. Supp. 3d 822 (S.D. Tex. 2016) ...................................................................... 19

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ............................................................................ 9

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................... 8, 10, 12

*Krim v. pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005) ............................................................................ 20

*Lampkin v. UBS Fin. Servs., Inc.*,
    925 F.3d 727 (5th Cir. 2019) ............................................................................ 20

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999) ......................................................................... 9

*Leroy v. City of Hous.*,
    831 F.2d 576 (5th Cir. 1987) ............................................................................ 10

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
    No. 08 Civ. 00235, 2019 WL 4877563 (D.N.J. Oct. 3, 2019) ...................................... 9

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................ 20

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ............................................................................ 15

*Marcus v. J.C. Penney Co., Inc.*,
    No. 13 Civ. 736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) .................................. 7

*Marcus v. J.C. Penney Co., Inc., et al.*,
    No. 13 Civ. 736, 2018 WL 11275437 (E.D. Tex. Jan. 5, 2018) .................................. 7

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................................. 8

*McCloskey v. Match Grp., Inc.*,
    No. 16 Civ. 549, 2018 WL 4053362 (N.D. Tex. Aug. 24, 2018) ................................ 19

*Milano v. Perot Sys. Corp.*,
    No. 02 Civ. 1269, 2004 WL 2360031 (N.D. Tex. Oct. 19, 2004) ............................... 19

vii

*Miller v. Glob. Geophysical Servs. Inc.*,
   No. 14 Civ. 708, 2016 WL 11645372 (S.D. Tex. Jan. 14, 2016)................................... 8, 24, 25

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ..................................................................................................10, 11

*In re OCA, Inc. Sec. & Derivative Litig.*,
   No. 05 Civ. 2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) .......................................... 15, 18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ...................................................................................................... 3

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
   No. 11 Civ 3061, 2015 WL 5021954 (S.D. Tex. Aug. 24, 2015) .......................................... 12

*Parmelee v. Santander Consumer USA Holdings Inc.*,
   No. 16 Civ. 00783, 2019 WL 2352837 (N.D. Tex. June 3, 2019)................................................. 8

*Peak v. Zion Oil & Gas, Inc.*,
   No. 18 Civ. 02067, 2020 WL 1047894 (N.D. Tex. Mar. 3, 2020)............................................... 19

*Phyto Tech Corp. v. Givaudan SA*,
   No. 18 Civ. 6172, 2023 WL 1437714 (S.D.N.Y. Jan. 31, 2023) ...................................................11

*Pierce v. Morris*,
   No. 03 Civ. 026, 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) ............................................... 19

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
   307 F. Supp. 3d 583 (S.D. Tex. 2018) ..................................................................................... 19

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
   777 F. App'x 726 (5th Cir. 2019) .............................................................................................. 20

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................................................... 22

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..................................................................................................... 20

*Roussel v. Brinker Int'l, Inc.*,
   No. 05 Civ. 3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010)............................................... 18

*Sabourin v. Colvin*,
   No. 11 Civ. 2109, 2014 WL 3949506 (N.D. Tex. Aug. 12, 2014)...............................................11

*Schwartz v. TXU Corp.*,
   No. 02 Civ. 2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
 91 F. Supp. 2d 942 (E.D. Tex. 2000) ..................................................................... 6, 7

*In re Shell Oil Refinery*,
 155 F.R.D. 552 (E.D. La. 1993) ........................................................................... 8, 12

*Sims v. Shearson Lehman Bros., Inc.*,
 No. 90 Civ. 0252, 1993 WL 646022 (N.D. Tex. Nov. 29, 1993) ................................. 8

*Singh v. 21Vianet Grp., Inc.*,
 No. 14 Civ. 00894, 2018 WL 6427721 (E.D. Tex. Dec. 7, 2018) ............................... 8

*Slipchenko v. Brunel Energy*,
 No. 11 Civ. 1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) .................................11

*Special Situations Fund III, L.L.P. v. ViaGrafix Corp.*,
 No. 98 Civ. 1216, 2001 WL 182666 (N.D. Tex. Jan. 22, 2001) ............................... 19

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993) .................................................................................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ............................................................................................... 5

*Themis Cap. v. Democratic Republic of Congo*,
 No. 09 Civ. 1652, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ...............................11

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
 56 F.3d 295 (1st Cir. 1995) .................................................................................... 6

*Truk Int'l Fund LP v. Wehlmann*,
 737 F. Supp. 2d 611 (N.D. Tex. 2009) ................................................................... 19

*Turner v. Murphy Oil USA, Inc.*,
 472 F. Supp. 2d 830 (E.D. La. 2007) ..................................................................... 12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) ......................................................................... *passim*

*Varljen v. H.J. Meyers & Co.*,
 No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ........................ 23, 24

*Vassallo v. Goodman Networks, Inc.*,
 No. 15 Civ. 97, 2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) ................................... 8

*In re Vioxx Prod. Liab. Litig.*,
 No. 11 Civ. 1546, 2013 WL 5295707 (E.D. La. Sept. 18, 2013) ............................... 8

*Vista Outdoor, Inc. v. Reeves Fam. Tr.*,
  No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ...............................................11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................................... 6

*In re Waste Mgmt., Inc. Sec. Litig.*,
  No. 99 Civ. 2183, 2002 WL 35644013 (S.D. Tex. May 10, 2002)..................................... 12, 22

*Williams v. Go Frac, LLC*,
  No. 15 Civ. 00199, 2017 WL 3699350 (E.D. Tex. Apr. 26, 2017)................................. 8, 22, 23

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
  No. 14 Civ. 8925, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)...............................................11

*Wolfe v. Anchor Drilling Fluids USA Inc.*,
  No. 15 Civ. 1344, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015) ............................................. 8

**Statutes**

15 U.S.C. § 78u–4............................................................................................................... 7, 23

x

Pursuant to Federal Rule of Civil Procedure 23(h), Court-appointed Lead Counsel,[1] Kirby McInerney LLP ("Kirby McInerney"), on behalf of all Plaintiffs' Counsel,[2] respectfully moves for: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund, plus interest earned at the same rate as the Settlement Fund; (ii) payment of Plaintiffs' Counsel's Litigation Expenses in the amount of $204,323.08, plus interest earned at the same rate as the Settlement Fund; and (iii) an award of $10,000 for the costs and expenses incurred by Lead Plaintiff UMC Benefit Board, Inc., US Equity Fund-P Series, a series of the Wespath Funds Trust, US Equity Index Fund-P Series, a series of the Wespath Funds Trust, Wespath Institutional Investments LLC, US Equity Fund-I Series, a series of the Wespath Funds Trust, and US Equity Index Fund-I Series, a series of the Wespath Funds Trust ("Lead Plaintiff") in connection with litigating the claims in the above-captioned action (the "Action") on behalf of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs' Counsel have vigorously litigated this case on an entirely contingent basis against a well-resourced and experienced defense. The $45 million Settlement, if approved by the Court, represents an excellent outcome for the Settlement Class, particularly in light of the significant litigation risks in the Action. In the absence of settlement, the Action could have continued for years, through a decision on Defendants' pending motion to dismiss, the completion

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated October 30, 2023 (the "Stipulation"). *See* ECF No. 74-2. Citations herein to "¶ __" are to the Declaration of Daniel Hume in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Hume Declaration" or "Hume Decl."), filed herewith. Citations herein to "Ex. __" are to the exhibits annexed to the Hume Declaration. Citations to exhibits that have attached exhibits will be referenced as "Ex. __-__." The first numerical reference is to the entire exhibit attached to the Hume Declaration and the second alphabetical reference is to the exhibit within that exhibit.

[2] "Plaintiffs' Counsel" refers collectively to (i) Lead Counsel, Kirby McInerney (ii) Local Liaison Counsel, Steckler Wayne & Love PLLC ("Steckler"), and (iii) additional plaintiffs' counsel, Glancy Prongay & Murray LLP ("Glancy").

1

of fact and expert discovery, class certification, summary judgment, trial, and likely appeals. As discussed below, Defendants[3] advanced compelling defenses to Lead Plaintiff's claims and there was considerable uncertainty as to whether Lead Plaintiff would be able to achieve a meaningful recovery, let alone a recovery larger than the Settlement Amount, if the litigation continued.

As detailed in the accompanying Hume Declaration,[4] Plaintiffs' Counsel's litigation efforts were extensive and included, *inter alia*: (i) an exhaustive investigation into the facts and circumstances underlying the claims asserted against Defendants; (ii) the drafting and filing of the Consolidated Amended Class Action Complaint ("CAC"); (iii) consultations with merits and damages-related experts, including an expert on the Food and Drug Administration ("FDA")'s drug approval process; (iv) full briefing on Defendants' motion to dismiss; (v) months of hard-fought, arm's length settlement negotiations conducted with the assistance of well-respected and highly experienced mediator, Jed Melnick, Esq. of JAMS ("Mr. Melnick"), including two formal mediation sessions, the exchange of multiple written mediation submissions, and Plaintiffs' Counsel's review of over two million pages of non-public documents produced by the Reata Defendants; (vi) additional confirmatory discovery, including Plaintiffs' Counsel's review of thousands of additional pages of documents produced by the Reata Defendants and Lead Counsel's interviews with Officer Defendants J. Warren Huff and Colin J. Meyer; (vii) the negotiation and

---

[3] "Defendants" refers collectively to: defendant Reata Pharmaceuticals, Inc. ("Reata"); defendants J. Warren Huff, Colin J. Meyer, and Manmeet S. Soni (collectively, the "Officer Defendants"); defendants James E. Bass, William D. McClellan, Jr., R. Kent McGaughy, Jack B. Nielsen, and William E. Rose (collectively, the "Director Defendants," and together with Reata and the Officer Defendants, the "Reata Defendants"); and defendants Barclays Capital Inc., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Jefferies LLC, Ladenburg Thalmann & Co., Inc., Robert W. Baird & Co. Incorporated, Stifel, Nicolaus & Company, Incorporated, and SVB Securities LLC, f/k/a SVB Leerink LLC, n/k/a Leerink Partners LLC (collectively, the "Underwriter Defendants").

[4] The Court is respectfully referred to the Hume Declaration, filed concurrently herewith, for a detailed description of, *inter alia*: (i) the history of the Action; (ii) the nature of the claims asserted; (iii) the negotiations leading to the Settlement; (iv) the risks and uncertainties of continued litigation; and (v) the services Plaintiffs' Counsel provided for the benefit of the Settlement Class.

drafting of the Stipulation and related settlement documents; (viii) the drafting of motions in support of preliminary and final approval of the Settlement; (ix) preparation, in consultation with Lead Plaintiff's damages expert, of the proposed Plan of Allocation; and (x) coordination of the notice process approved by the Court. *See* ¶¶ 5, 26-58, 81, 97; Ex. 6 ¶¶ 4-11, 13.

Plaintiffs' Counsel undertook these substantial efforts and achieved the proposed Settlement in the face of substantial litigation risks. For example, as explained in the Hume Declaration and as summarized below, there were significant challenges to establishing Defendants' liability and damages in the Action. Among other things, Defendants argued, *inter alia*, that: (i) the alleged misstatements were either truthful or non-actionable under the PSLRA safe harbor and/or *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015); (ii) Defendants had no duty to disclose the allegedly omitted information; and (iii) even if Defendants' statements were false and/or misleading, they were not made with scienter. *See* ¶¶ 8, 33-34, 64, 66. Had the litigation continued, Defendants would also likely have argued that the alleged corrective disclosures were not corrective of any alleged misstatement and/or that they did not cause any claimed losses, including because, at the time of the alleged corrective disclosures, Reata announced other news unrelated to the alleged fraud that could have impacted Reata's share price. *See* ¶¶ 9, 69-73.

As compensation for their efforts, Lead Counsel requests a fee award of 30% of the Settlement Fund, reimbursement of Litigation Expenses in the amount of $204,323.08, and reimbursement for Lead Plaintiff's costs in the amount of $10,000. As discussed below, a 30% fee is well within the range of fees awarded by courts in the Fifth Circuit. *See* ¶¶ 89-92; Ex. 7 ¶¶ 15-17. Moreover, the requested fee equates to a lodestar multiplier of 2.24, which is well within the range of multipliers awarded in complex class actions with substantial contingency risks, such as

this one. *See* ¶¶ 93-94, 103-04; Ex. 7 ¶¶ 25-26.

Lead Plaintiff – a sophisticated institutional investor that has been actively involved in the Action – has approved of and supports the requested fee and expense awards as fair and reasonable. *See* ¶¶ 92, 118; Ex. 2 ¶¶ 4-5, 8-10. The reaction of the Settlement Class to date also supports the requests. Although the March 8, 2024 deadline for objections has not yet passed, to date, no Settlement Class Member has objected to the fee or expense amounts set forth in the Notice. *See* ¶¶ 58, 119-20; Ex. 1 ¶ 22. For these reasons, as well as those set forth below and in the Hume Declaration, Lead Counsel respectfully requests that the Court approve its application for an award of attorneys' fees and expenses.

## ARGUMENT

**I.    Lead Counsel's Request for Attorneys' Fees Is Reasonable and Should Be Approved**

**A.    Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund**

Both the Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).

Awards of attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014). Such awards also ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation," *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000), including private securities actions, such as this one, which are "an essential supplement to

criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions are "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").

### B.    The Requested Attorneys' Fees Are Reasonable under Either the Percentage-of-the-Fund Method or the Lodestar Method

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012) ("*Dell*"). The Fifth Circuit affords "district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the . . . considerations" set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *Dell*, 669 F.3d at 644; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02 Civ. 1152, 2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018) ("*Halliburton*") ("Regardless of whether the court uses the percentage method or the lodestar method, it must consider the *Johnson* factors in calculating attorney's fees.").

### 1.    The Fee Request Is Reasonable under the Percentage Method, Which Is the Preferred Method for Assessing Fee Requests

Although use of the lodestar method is permitted in the Fifth Circuit, "there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Schwartz v. TXU Corp.*, No. 02 Civ. 2243, 2005 WL 3148350, at *26 (N.D. Tex. Nov.

8, 2005); *see also Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003) ("A percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases."). This is because the percentage method "allows for easy computation," "aligns the interests of class counsel with those of the class members," and "reduces incentives to protract litigation." *Dell*, 669 F.3d at 643 & n.34; *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) (percentage method superior to lodestar method because the latter "consumes enormous judicial resources," "inaccurately reflects the value of services performed[,]" "encourages class-action attorneys to drag their feet to the detriment of their respective classes[,]" and "penalizes expedient success"); *Schwartz*, 2005 WL 3148350, at *25 ("[T]he percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court."); Ex. 7 ¶ 10 (noting that the lodestar approach "fell out of favor in common fund class actions" because "it did not align the interests of class counsel with the interests of the class").[5]

Moreover, because the percentage method is "explicitly contemplated by the [PSLRA]," there is "near-universal adoption of the percentage method in securities cases," such as this one. *In re Arthrocare Corp. Sec. Litig.*, No. 08 Civ. 574, 2012 WL 12951371, at *4 (W.D. Tex. June 4, 2012) (quoting *Dell*, 669 F.3d at 643); *see Halliburton*, 2018 WL 1942227, at *8 ("The PSL[R]A expressly contemplates the percentage method, providing that '[t]otal attorneys' fees and expenses

---

[5] Numerous other circuits have endorsed the percentage method. *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of Columbia Circuits *require* the use of the percentage method in common fund cases. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

. . . shall not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class'" (emphasis added) (quoting 15 U.S.C. § 78u–4(a)(6)); *see also* Ex. 7 ¶ 12.

Here, the requested 30% fee award is reasonable under the percentage method for several reasons.

*First*, as numerous courts have observed, fee awards of 30% or more are typical in this Circuit and are regularly found to be reasonable. *See Schwartz*, 2005 WL 3148350, at *27 (courts "regularly" award fees of "30% or more of the total recovery"); *Burford v. Cargill, Inc.*, No. 05 Civ. 0283, 2012 WL 5471985, at *5 (W.D. La. Nov. 8, 2012) (a fee award of one-third of the common fund "is reasonable and typical" in the Fifth Circuit); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 17 Civ. 3852, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *see also* Ex. 7 ¶¶ 15-17.[6]

*Second*, courts in the Fifth Circuit routinely grant such awards, including in cases involving comparably sized or larger settlement funds. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 (awarding 33⅓% of $100 million settlement, which is "not . . . an unusually large or high fee"); *Marcus v. J.C. Penney Co., Inc.*, No. 13 Civ. 736, 2018 WL 11275437, at *1 (E.D. Tex. Jan. 5,

---

[6] *See also Kemp v. Unum Life Ins. Co. of Am.*, No. 14 Civ. 0944, 2015 WL 8526689, at *9 (E.D. La. Dec. 11, 2015) (a one-third fee "falls within the range of awards granted by courts within the Fifth Circuit and is a reasonable benchmark"); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) ("[D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee."); *Shaw*, 91 F. Supp. 2d at 972 ("[A]ttorneys' fees in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%) have been routinely awarded in class actions."); *Marcus v. J.C. Penney Co., Inc.*, No. 13 Civ. 736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) (it is "not unusual" for fees "to range between 25% to 30% of the fund or more"); *Halliburton*, 2018 WL 1942227, at *12 (33⅓% fee is "reasonable and fair"); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12 Civ. 1609, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (33⅓% fee "is common in this geographic area" and "has been approved in other common fund cases"); *Jenkins*, 300 F.R.D. at 307 ("[I]t is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third.") (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 729 (E.D. La. 2008)).

7

2018) (awarding 30% of $97.5 million settlement); *In re Combustion*, 968 F. Supp. at 1156 (awarding 36% of $127 million settlement); *Sims v. Shearson Lehman Bros., Inc.*, No. 90 Civ. 0252, 1993 WL 646022, at *3 (N.D. Tex. Nov. 29, 1993) (awarding one-third of $30 million settlement); *Burford*, 2012 WL 5471985, at *1 (awarding one-third of $27.5 million settlement); *see also* Ex. 7 ¶ 17.[7]

*Third*, the requested 30% fee is consistent with the market-based approach to awarding attorneys' fees in class actions. As numerous courts have recognized, the best measure of the compensation class counsel should receive is "the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *see In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 41 (D.N.H. 2006) ("[T]he best way to determine the reasonableness of a fee award is to assess what the fee arrangement would have been had it been determined by an open,

---

[7] *See also Singh v. 21Vianet Grp., Inc.*, No. 14 Civ. 00894, 2018 WL 6427721, at *2 (E.D. Tex. Dec. 7, 2018) (awarding 33.3% of $100 million settlement); *In re Shell Oil Refinery*, 155 F.R.D. 552, 575 (E.D. La. 1993) (awarding one-third of $170 million settlement); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) (awarding 30% of $110 million settlement); *Di Giacomo v. Plains All Am. Pipeline*, No. 99 Civ. 4137, 2001 WL 34633373, at *8-11 (S.D. Tex. Dec. 19, 2001) (awarding 30% of $24.1 million settlement); *Halliburton*, 2018 WL 1942227, at *9 n.8 (collecting securities cases awarding 30-36% of settlement fund); *Williams v. Go Frac, LLC*, No. 15 Civ. 00199, 2017 WL 3699350, at *2-3 (E.D. Tex. Apr. 26, 2017) (awarding 35% of settlement as "fair and reasonable"); Final Judgment and Order of Dismissal with Prejudice, *Levitan v. A Pea in the Pod, Inc.*, No. 94 Civ. 0247 (N.D. Tex. Mar. 27, 1998), ECF No. 213 (awarding 40% of settlement); *Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 15 Civ. 1344, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (awarding 40% of maximum settlement amount); *In re EZCORP, Inc. Sec. Litig.*, No. 15 Civ. 00608, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33% of settlement); *In re Vioxx Prod. Liab. Litig.*, No. 11 Civ. 1546, 2013 WL 5295707, at *4-5 (E.D. La. Sept. 18, 2013) (same); *Vassallo v. Goodman Networks, Inc.*, No. 15 Civ. 97, 2016 WL 6037847, at *4, *6 (E.D. Tex. Oct. 14, 2016) (awarding 39.78% of settlement); *Fairway Med. Ctr., L.L.C. v. McGowan Enters., Inc.*, No. 16 Civ. 3782, 2018 WL 1479222, at *2 (E.D. La. Mar. 27, 2018) (awarding one-third of settlement); *Parmelee v. Santander Consumer USA Holdings Inc.*, No. 16 Civ. 00783, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (same); *Al's Pals*, 2019 WL 387409, at *4 (same); *Miller v. Glob. Geophysical Servs. Inc.*, No. 14 Civ. 708, 2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) (same); *Kemp*, 2015 WL 8526689, at *9 (same); *Frost v. Oil States Energy Servs.*, No. 15 Civ. 1100, 2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015) (same); *Campton v. Ignite Rest. Grp., Inc.*, No. 12 Civ. 2196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015) (same); *Jenkins*, 300 F.R.D. at 307 (same); *Barrera v. Nat'l Crane Corp.*, No. 10 Civ. 0196, 2012 WL 242828, at *5 (W.D. Tex. Jan. 25, 2012) (same); *Faircloth v. Certified Fin. Inc.*, No. 99 Civ. 3097, 2001 WL 527489, at *9 (E.D. La. May 16, 2001) (same); Order and Final Judgment, *Branca v. First USA Paymentech, Inc.*, No. 97 Civ. 2507 (N.D. Tex. Jan. 4, 2001), ECF No. 59 (same); Order and Final Judgment, *Gambino, et al. v. DrKoop.com, Inc., et al.*, No. 00 Civ. 427 (W.D. Tex. Nov. 14, 2001), ECF No. 48 (same).

competitive process at the outset of the case.").

In the market for legal services, contingent fee lawyers are almost always compensated as a percentage of their client's recovery. *See In re Flint Water Cases*, 583 F. Supp. 3d 911, 931 (E.D. Mich. 2022); *see also Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the prevailing method of compensating lawyers for similar services *is* the contingent fee, then the contingent fee is the market rate.") (emphasis added). And it is "customary in large, complex commercial litigation for [such] contingency fees to be set at 33 to 40%." *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 445 (S.D. Tex. 1999); *see Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08 Civ. 00235, 2019 WL 4877563, at *8 (D.N.J. Oct. 3, 2019) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation.").

Accordingly, it is unsurprising that Lead Plaintiff, a sophisticated institutional investor, specified a fee of up to 33% in its fee agreement with Lead Counsel at the outset of the Action. *See* ¶ 91. This provides compelling evidence of what absent Settlement Class Members would have agreed to *ex ante*. *See* Ex. 7 ¶ 14. As such, the requested 30% fee here is not only consistent with the market rate; it is entitled to a presumption of reasonableness. *See, e.g.*, *In re Dell, Inc.*, No. 06 Civ. 726, 2010 WL 2371834, at *14 (W.D. Tex. June 11, 2010) (amount of attorneys' fees specified in a retainer agreement "entered into by a properly-selected, sophisticated Lead Plaintiff and properly-selected Lead Counsel" is "entitled to a presumption of reasonableness"); *Schwartz*, 2005 WL 3148350, at *26 (lead counsel's fee application, made pursuant to a fee schedule negotiated with lead plaintiff, is "presumptively reasonable" and "precisely the type of bargaining that the PSLRA anticipated and to which a court reasonably may give substantial deference").

### 2. The Fee Request Is Also Reasonable under the Lodestar Method

Courts applying the percentage method sometimes perform a "cross-check" for reasonableness by considering counsel's lodestar. *See* Ex. 7 ¶ 22; *City of Omaha*, 2015 WL 965696, at *9 ("The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a rough cross-check on the reasonableness of the [percentage] fee."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072-73 (S.D. Tex. 2012) ("[T]he best approach is to use the percentage method in a common-fund or variant case with the lodestar method as a cross-check."). The purpose of the lodestar cross-check is to prevent "windfall fees, *i.e.*, to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *In re Heartland*, 851 F. Supp. 2d at 1086; *see* Ex. 7 ¶ 21.

To perform a lodestar cross-check, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43. The appropriate hourly rates to be used are the current "prevailing market rates for lawyers with comparable experience and expertise in complex class-action litigation." *In re Heartland*, 851 F. Supp. 2d at 1087-88.[8] In securities class actions and other complex cases, fees representing multiples above counsel's lodestar are typically awarded to reflect contingency risks and other relevant factors. *See Klein*, 705 F. Supp. 2d at 680 (lodestar multipliers "are not uncommon in class action settlements" and are often "warranted due to the risks entailed in th[e] lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").

---

[8] The Supreme Court and Fifth Circuit have approved the use of current hourly rates, rather than historical rates, to calculate base lodestar figures to compensate counsel for the delay in receiving payment. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *Leroy v. City of Hous.*, 831 F.2d 576, 584 (5th Cir. 1987); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) ("One accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar").

Here, Plaintiffs' Counsel spent 7,464.2 hours litigating the Action. *See* ¶¶ 103-04. Plaintiffs' Counsel's hourly rates range from $715-$1,250 for partners, $700-$1,200 for of counsels, $400-$800 for associates, and $350-$400 for staff attorneys. *See* ¶ 102; Exs. 3-A, 4-A, & 5-A. These rates are consistent with rates approved in numerous cases throughout the country, including by courts within this Circuit.[9] They are also consistent with, or lower than, the rates charged by the defense firms in this Action,[10] other defense counsel engaged in complex litigation, and other plaintiffs' firms engaged in securities litigation. *See* Ex. 10.[11]

---

[9] *See*, *e.g.*, *Sabourin v. Colvin*, No. 11 Civ. 2109, 2014 WL 3949506, at *1-2 (N.D. Tex. Aug. 12, 2014) (approving de facto hourly rate of $1,245.55); *Slipchenko v. Brunel Energy*, No. 11 Civ. 1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (finding, in 2015, that billing rates charged by "Texas-based defense counsel . . . range from $275-$700 for associates and $575-$1,125 for partners"); *Eric B. v. Comm'r of Soc. Sec.*, No. 17 Civ. 0083, 2019 WL 7546622, at *2 (N.D. Tex. Dec. 18, 2019), *adopted by* 2020 WL 109856 (N.D. Tex. Jan. 8, 2020) (finding effective hourly rate of $937.50 reasonable); *Aperia Sols., Inc. v. Evance, Inc.*, No. 18 Civ. 3276, 2021 WL 3710563, at *3 n.22 (N.D. Tex. Aug. 19, 2021), *reversed on other grounds*, 2022 WL 2116001 (June 13, 2022) ("Scores of Texas lawyers now charge $1,000 or more per hour."); *Phyto Tech Corp. v. Givaudan SA*, No. 18 Civ. 6172, 2023 WL 1437714, at *7 (S.D.N.Y. Jan. 31, 2023) (partner rates of $897.50 to $1,079.97 per hour reasonable); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 MC 00023, 2021 WL 1353756, at *3 (S.D.N.Y. Apr. 12, 2021) (partner rates of $1,175 and $1,350 per hour and associate rates of $650 per hour reasonable); *Vista Outdoor, Inc. v. Reeves Fam. Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (partner rates of $1,170 to $1,260 per hour reasonable); *Themis Cap. v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (noting that "partner billing rates in excess of $1,000 an hour[] are by now not uncommon" in complex litigation).

[10] *See*, *e.g.*, Decl. of Greg D. Andres in Support for Attorney Fees and Costs Awarded, *Tao An, et al. v. Luc A. Despins, et al.*, No. 22 Civ. 10062 (S.D.N.Y. Aug. 11, 2023), ECF Nos. 32-9, 32-11 (Davis Polk & Wardwell LLP standard hourly billing rates for partner ($1,990 in 2022 and $2,200 in 2023), of counsel ($1,635 in 2022 and $1,800 in 2023), and associates ($995-$1,390 in 2022 and $1,550 in 2023)); Application for Compensation, *In re Taco Bueno Rests., Inc., Reorganized Debtors*, No. 18-33678 (Bankr. N.D. Tex. Feb. 14, 2019), ECF No. 308 (Vinson & Elkins LLP hourly billing rates for partners ($945-$1,280), of counsel ($830-$915), and associates ($450-$945)); Final Application for Compensation, *In re Hodyon, Inc., Reorganized Debtor*, No. 18-10386 (Bankr. D. Del. Aug. 9, 2018), ECF No. 26 (Shearman & Sterling LLP billing rates for partners ($1,165-$1,325) and non-partners ($495-$1,295)).

[11] Plaintiffs' Counsel's hourly rates for professional support staff range from $350 to $475 for analysts and $175 to $300 for paralegals. *See* ¶ 102 n.9; Exs. 3-A, 4-A, & 5-A. Analyst and paralegal time is compensable as part of Lead Counsel's fee award. *See*, *e.g.*, *Destefano v. Zynga, Inc.*, No. 12 Civ. 4007, 2016 WL 537946, at *19 (N.D. Cal. Feb. 11, 2016) ("As part of their attorneys' fee award, Lead Counsel here also seek an award covering the cost of financial analysts and related professionals, which courts have also found compensable as part of the fee award"); *Enron*, 586 F. Supp. 2d at 784 (noting the "increasingly widespread custom of separately billing for the services of paralegals and law students who serve as clerks") (quoting *Jenkins*, 491 U.S. at 285-86). Courts have regularly approved hourly rates for analysts and paralegals that are comparable to, or higher than, the rates at issue here. *See*, *e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, No. 15 Civ. 4883, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (granting lead counsel's fee request) and *id.* at ECF No. 174-4 (finding analyst rate of $550 per hour reasonable); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14 Civ. 8925, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (granting lead counsel's fee request) and *id.* at ECF No. 225-4 (finding analyst rates ranging from $325-$500 reasonable); Judgment and Order,

Using these reasonable hourly rates, Plaintiffs' Counsel's lodestar is $6,018,937.50. *See* ¶¶ 103-04. The requested fee equates to a multiplier of approximately 2.24, which falls well within the range of multipliers approved by other courts in this Circuit in similarly complex cases. *See, e.g.*, *Enron*, 586 F. Supp. 2d at 752 & 751 n.20 (awarding 5.2 multiplier and stating that "[m]ultiples from one to four are frequently awarded in common fund cases"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) (noting that the average range of multipliers is 1.0 to 4.5 and "multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Di Giacomo*, 2001 WL 34633373, at *11 (approving 5.3 multiplier); *In re Combustion*, 968 F. Supp. at 1133, 1141 (characterizing 2.99 multiplier as "conservative" and noting that multipliers of "one to four frequently are awarded in common fund cases"); *see also* Ex. 7 ¶¶ 25-26.[12]

In short, whether calculated as a percentage of the fund or under the lodestar method, Lead

---

*Lazan v. Quantum Corp., et al.*, No. 18 Civ. 00923 (N.D. Cal. Nov. 27, 2019), ECF No. 69 ¶ 15 (approving Kirby McInerney's fee request) and *id.* at ECF No. 63-8 (finding analyst rate of $475 reasonable); Order and Final Judgment, *In re AudioEye, Inc., Sec. Litig.*, No. 15 Civ. 00163 (D. Ariz. May 8, 2017), ECF No. 100 at 8 (awarding Kirby McInerney's fee request) and *id.* at ECF No. 96-2 (finding analyst rate of $400 reasonable); Order, *Esposito v. Am. Renal Ass'n Holdings, Inc.*, No. 16 Civ. 11797 (D. Mass. June 15, 2018), ECF No. 106 at 6-7 (awarding Kirby McInerney's fee request) and *id.* at ECF No. 103-3 (finding analyst rate of $450 reasonable); Order, *In re SCANA Corp. Sec. Litig.*, No. 17 Civ. 2616 (D.S.C. July 23, 2020), ECF Nos. 240 & 229-6 (finding paralegal rates between $325 and $335 reasonable); *Glock v. FTS Int'l, Inc.*, No. 20 Civ. 03928, 2021 WL 1422714, at *1-2 (S.D. Tex. Apr. 13, 2021) and *id.* at ECF No. 23-1 (finding paralegal rates between $275 and $350 reasonable); Order, *Rougier v. Applied Optoelectronics, Inc., et al.*, No. 17 Civ. 2399 (S.D. Tex. Nov. 24, 2020), ECF Nos. 156 & 150-5 (finding paralegal rates between $265 and $325 reasonable).

[12] *See also Celeste Neely*, No. 21 Civ. 307, 2022 WL 17736350, at *14 (E.D. Tex. Dec. 16, 2022) ("When a lodestar cross-check is applied . . . courts frequently use a multiplier ranging from one to four"); *Klein*, 705 F. Supp. 2d at 681 (finding 30% fee request, which equated to a 2.5 multiplier, reasonable); *Garza v. Sporting Goods Props., Inc.*, No. 93 Civ. 108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (awarding 4 multiplier and recognizing that "[t]he range of multipliers in large and complicated class actions have ranged from 2.26 to 4.5"); *Enron*, 586 F. Supp. 2d at 752 ("[T]he Ninth Circuit performed a survey of multipliers and found a range of 0.6-19.6, with most (20 of 24, or 83%) from 1.0 to 4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range"); *In re Waste Mgmt., Inc. Sec. Litig.*, No. 99 Civ. 2183, 2002 WL 35644013, at *29 (S.D. Tex. May 10, 2002) (5.3 multiplier "is supported by case law and is within the range of multipliers approved in other class actions"); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) ("[A] lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *Evans on behalf of United Dev. Funding IV v. Greenlaw*, No. 16 Civ. 0635, 2019 WL 7879735, at *3-4 (N.D. Tex. Feb. 27, 2019) (awarding 3.06 multiplier); *In re Shell Oil*, 155 F.R.D. at 573 (applying multipliers of 3-3.5); *City of Omaha*, 2015 WL 965696, at *10 ("Multipliers ranging from one to four frequently are awarded in common fund cases" and "[a] large common fund award may warrant an even larger multiplier"); *Burford*, 2012 WL 5471985, at *6 n.1 (multipliers "of 1 to 4" are "typically approved by courts within this circuit"); *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. 11 Civ. 3061, 2015 WL 5021954, at *13-14 (S.D. Tex. Aug. 24, 2015) (awarding 3.0 multiplier).

Counsel respectfully submits that the requested fee is within the range of fees generally awarded by courts in the Fifth Circuit. Additionally, as discussed below, a review of the factors established by the Fifth Circuit in *Johnson* confirms the reasonableness of the requested fee.

### C.    The *Johnson* Factors Confirm the Reasonableness of the Requested Fee

An analysis of the *Johnson* factors confirms that the requested 30% fee award is fair and reasonable in this case. The *Johnson* factors are:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;](4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;][13] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.

488 F.2d at 717-19; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors).

### 1.    The Time and Labor Required

The substantial time and effort Plaintiffs' Counsel expended prosecuting the Action and achieving the Settlement strongly supports the requested fee. As set forth in the Hume Declaration, Plaintiffs' Counsel: (i) conducted a comprehensive investigation into the merits of the claims and the likely damages that could be recovered by the Settlement Class, which included a review and analysis of publicly available information concerning Defendants, the engagement of a highly-experienced private investigator, and consultations with experts on merits and damages issues, including an expert on the FDA approval process; (ii) prepared the 229-page CAC (ECF No. 37);

---

[13] The seventh *Johnson* factor – "[t]ime limitations imposed by the client or the circumstances" – is not relevant here because no time limitations were imposed on Lead Counsel in its prosecution of the Action. *See Halliburton*, 2018 WL 1942227, at *11 (seventh factor inapplicable where "there is no indication that Lead Plaintiff imposed any time limits in the prosecution of this case"); *see also Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case").

(iii) drafted a comprehensive opposition to Defendants' motion to dismiss (ECF No. 60); (iv) engaged in months of arm's length settlement negotiations overseen by Mr. Melnick, which involved two formal mediation sessions, the exchange of multiple written mediation statements, and the review of over two million pages of non-public documents produced by the Reata Defendants; (v) engaged in substantial additional confirmatory discovery, including a review of thousands of additional non-public documents and interviews with Officer Defendants Huff and Meyer; (vi) negotiated and drafted the Stipulation; (vii) drafted motions in support of preliminary and final approval of the Settlement; (viii) worked with Lead Plaintiff's damages expert to prepare the Plan of Allocation; and (viii) oversaw the Court-approved notice process. *See* ¶¶ 5, 26-58, 81, 97; Ex. 6 ¶¶ 4-11, 13.

As noted above, Plaintiffs' Counsel have expended 7,464.2 hours prosecuting the Action with a lodestar value of $6,018,937.50. *See* ¶¶ 103-04. Moreover, if final approval is granted, Plaintiffs' Counsel will expend additional hours and resources assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a distribution motion. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom.*, 674 F. App'x 37 (2d Cir. 2016) ("Considering that the work in this matter is not yet concluded for Plaintiffs' Counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). The substantial time and effort that Plaintiffs' Counsel devoted to this case was critical in obtaining an excellent result for the Settlement Class and confirms the reasonableness of the requested fee.

### 2.   The Novelty and Difficulty of the Issues

Courts have long recognized that securities class actions are "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) ("[A] securities case, by its very nature, is a complex animal."). Securities class actions have become even "more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). This is particularly true in the Fifth Circuit. *See In re OCA, Inc. Sec. & Derivative Litig.*, No. 05 Civ. 2165, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult in this circuit.").

The significant risks to establishing liability and damages in this Action are detailed in the Hume Declaration. *See* ¶¶ 63-78. In short, Defendants raised, or would have raised, challenging defenses with respect to the elements of falsity, scienter, loss causation, and damages. *See* ¶¶ 64-73, 75. If Defendants had prevailed on their arguments with respect to falsity and/or scienter either at the motion to dismiss stage, summary judgment, or trial, it would have proven fatal to some or all of Settlement Class Members' claims. *See* ¶¶ 64-68, 75. And even if Lead Plaintiff prevailed on those issues entirely, Defendants' anticipated arguments regarding loss causation and damages posed a significant threat that the total recoverable damages would be significantly reduced or eliminated.  *See* ¶¶ 69-73.

Moreover, continued litigation would have involved substantial motion practice, extensive expert involvement, the production and review of additional party and third-party documents, the taking of numerous depositions, and a lengthy trial. *See* ¶¶ 74-77. Thus, the costs and risks

15

associated with litigating this Action to a verdict – not to mention the inevitable appeals – would have been high, and there was no guarantee of achieving a recovery greater than the Settlement. *See id.* Lead Counsel worked diligently to obtain an excellent outcome in the face of these substantial risks. Accordingly, this factor also weighs in favor of approval of the requested fee.

### 3. The Skill Required to Adequately Perform the Legal Services and the Experience, Reputation, and Ability of Plaintiffs' Counsel

The third and ninth *Johnson* factors also support the requested fee award. Plaintiffs' Counsel prosecuted the Action vigorously, provided high-quality legal representation, and obtained an excellent result for the Settlement Class. Plaintiffs' Counsel's substantial experience in the field of securities class actions and other complex litigation, as demonstrated by their firm resumes (*see* Exs. 3-C, 4-C, & 5-C), along with their effort and skill in challenging Defendants' motion to dismiss, digesting voluminous discovery, and presenting a strong case during settlement negotiations, was essential to achieving the Settlement. *See* ¶¶ 96-98. Plaintiffs' Counsel's hard work on this litigation, and the high caliber of that work, supports approval of the requested fee. *See Schwartz*, 2005 WL 3148350, at *30.

Courts have also recognized that the quality of opposing counsel should be taken into account in assessing the quality of lead counsel's performance. *See id.* Here, Defendants were represented by experienced, aggressive, and capable counsel from Davis Polk & Wardwell LLP, Vinson & Elkins LLP, and Shearman & Sterling LLP – prestigious and well-respected defense firms – that vigorously and ably defended the Action. *See* ¶ 98. Notwithstanding this opposition, Plaintiffs' Counsel were able to develop their case and persuade Defendants to settle on terms favorable to the Settlement Class. Accordingly, these factors also support approval of the requested fee award.

### 4. Preclusion of Other Employment

Plaintiffs' Counsel spent 7,464.2 hours litigating this case on behalf of Lead Plaintiff and the Settlement Class. *See* ¶¶ 103-04. This is time that Plaintiffs' Counsel could have devoted to other potentially more lucrative matters. Moreover, Plaintiffs' Counsel dedicated this time despite the significant risks of no recovery and while deferring any payment of their fees and expenses throughout the course of the litigation. *See* ¶¶ 107-09. This curtailed their ability to assign their attorneys and staff to perform work simultaneously on other matters. Accordingly, this factor also supports the requested fee. *See Halliburton*, 2018 WL 1942227, at *11; *Burford*, 2012 WL 5471985, at *3.

### 5. The Customary Fee and Awards in Similar Cases

As discussed at Points I.B.1 & I.B.2, *supra*, the requested fee is well within the range of attorneys' fees awarded in similar cases on both a percentage and lodestar basis. This strongly supports approval of the requested fee.

### 6. The Contingent Nature of the Fee

The contingent nature of counsel's fee, particularly in light of the substantial risks posed by this litigation, also weighs in favor of its approval. Indeed, Plaintiffs' Counsel undertook this case on a contingency-fee basis, carrying the risk of not being compensated for their services and not being reimbursed for their out-of-pocket costs. *See* ¶¶ 107-09. Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31-32; *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

As noted above and in the Hume Declaration, Lead Plaintiff faced significant challenges in this Action. *See* ¶¶ 63-78; Point I.C.2, *supra*. Defendants vigorously contested the elements of falsity and scienter in their motion to dismiss and would have continued to contest those elements, as well as loss causation and damages, through summary judgment, trial, and eventual appeals. Despite these substantial risks, Plaintiffs' Counsel prosecuted the Action on a contingent basis, knowing the case could last for many years and would require a substantial expenditure of time and resources. Plaintiffs' Counsel's assumption of this contingency risk strongly supports the reasonableness of the requested fee. *See OCA*, 2009 WL 512081, at *22 ("[T]he risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted."); *Billitteri v. Secs. Am., Inc.*, No. 10 MDL 2145, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) (similar).

### 7.    The Amount Involved and the Results Achieved

The result achieved by counsel is also a significant factor to be considered in awarding attorneys' fees. *See Roussel v. Brinker Int'l, Inc.*, No. 05 Civ. 3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th Cir. 2011); *see also Billitteri*, 2011 WL 3585983, at *8.

Here, Plaintiffs' Counsel secured a $45 million Settlement that will provide payment to Settlement Class Members in the near term while avoiding the significant risks of continued litigation. *See* ¶¶ 59-78. The Settlement represents approximately 4% of the $1.138 billion in class-wide damages that Lead Plaintiff and Lead Counsel believe could have been recovered had the Action been litigated to a successful verdict that withstood subsequent appeals. *See* ¶ 60 & n.5. To put this in perspective, NERA Economic Consulting ("NERA") has reported that the median settlement between 2014 and 2023 in securities cases with similar estimated class-wide damages

recovered 1.3% of investor losses. *See* Ex. 8 at 25; *see also* Ex. 7 ¶ 20.[14] The Settlement here represents *over three times* that amount. The Settlement is also over three times larger than the median settlements in securities class actions settled in both 2022 and 2023, reported by Cornerstone Research and NERA to be $13 and $14 million, respectively. *See* Ex. 9 at 1; Ex. 8 at 20; *see also* ¶ 61. Accordingly, there can be no doubt that Plaintiffs' Counsel have achieved a favorable result for the Settlement Class, which further supports approval of the requested fee.

### 8.    The Undesirability of the Case

Securities cases, such as this one, are often considered "undesirable" due to factors such as: (i) expensive litigation costs; (ii) formidable opposition; (iii) the contingent nature of the fee; and (iv) the possibility of no recovery. *See Halliburton*, 2018 WL 1942227, at *12; *Schwartz*, 2005 WL 3148350, at *27. Moreover, securities cases have become inherently more difficult for plaintiffs since the passage of the PSLRA. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Consequently, courts in this Circuit have repeatedly dismissed securities cases, including those involving Section 11 claims, at the pleading stage,[15] and the Fifth

---

[14] *See also Enron*, 586 F. Supp. 2d at 804 ("The typical recovery in most class actions generally is three-to-six cents on the dollar."); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09 Civ. 00419, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities class action settlement where recovery was 3.5% of estimated damages); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 78595, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (the "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses").

[15] *See, e.g.*, *Burback v. Oblon*, No. 20 Civ. 946, 2021 WL 4477607 (E.D. Tex. Sept. 30, 2021): *Peak v. Zion Oil & Gas, Inc.*, No. 18 Civ. 02067, 2020 WL 1047894 (N.D. Tex. Mar. 3, 2020); *McCloskey v. Match Grp., Inc.*, No. 16 Civ. 549, 2018 WL 4053362 (N.D. Tex. Aug. 24, 2018); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583 (S.D. Tex. 2018); *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822 (S.D. Tex. 2016): *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666 (S.D. Tex. 2013); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 365 (S.D. Tex. 2011); *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611 (N.D. Tex. 2009); *Pierce v. Morris*, No. 03 Civ. 026, 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006); *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151 (N.D. Tex. 2007); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 864-66 (N.D. Tex. 2005); *Milano v. Perot Sys. Corp.*, No. 02 Civ. 1269, 2004 WL 2360031 (N.D. Tex. Oct. 19, 2004); *Special Situations Fund III, L.L.P. v. ViaGrafix Corp.*, No. 98 Civ. 1216, 2001 WL 182666 (N.D. Tex. Jan. 22, 2001).

19

Circuit has repeatedly affirmed such dismissals.[16]

Moreover, unlike in many other securities class actions, there was no government investigation into Reata here, no restatement, and no admission of wrongdoing by Defendants. As such, there was no clear roadmap for Plaintiffs' Counsel to follow. There were also substantial risks in financing and prosecuting the Action. *See* ¶¶ 63-78, 105-09. Thus, when Plaintiffs' Counsel undertook their representation of Lead Plaintiff and the Settlement Class, it was with the knowledge that they would have to spend substantial time and resources without any assurance of compensation or reimbursement. This further supports approval of the requested fee. *See, e.g.*, *Braud v. Transp. Serv. Co. of Ill.*, Nos. 05 Civ. 1898, 05 Civ. 1977, 05 Civ. 5557, 06 Civ. 0891, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the "undesirability in this case warrants an increase in the fee award"); *Billitteri*, 2011 WL 3585983, at *8 (similar).

### 9.    The Nature and Length of the Relationship with the Client

Lead Counsel has represented Lead Plaintiff throughout the course of the litigation and there has been a solid and effective relationship between Lead Counsel and Lead Plaintiff during this time. *See* ¶¶ 118, 122; Ex. 2 ¶¶ 3-6; *see also Billitteri*, 2011 WL 3585983, at *8 (considering the "strong and effective relationship between class counsel and the named Plaintiffs" in approving attorneys' fee request). Moreover, Lead Plaintiff fully supports and approves of Lead Counsel's fee request. *See* ¶¶ 92, 118; Ex. 2 ¶¶ 8-10. This further supports approval of the requested fee. *See*

---

[16] *See, e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019); *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 389 (2019); *Hopson v. Chase Home Fin., L.L.C.*, 605 F. App'x 267 (5th Cir. 2015); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005); *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003).

Point I.D.2, *infra*.

### D.    Other Factors Considered by Courts Further Support the Requested Fee

In addition to the *Johnson* factors, courts also consider other factors, such as (i) public policy considerations, (ii) lead plaintiff's approval of the fee, and (iii) the reaction of the class. These factors further confirm the reasonableness of the requested fee here.

### 1.    Public Policy Considerations Support the Requested Fee

There is a strong public policy in favor of rewarding firms for bringing successful securities lawsuits. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, No. 15 Civ. 00374, 2020 WL 218518, at *2 (W.D. Tex. Jan. 10, 2020). This is because private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 310.

Here, Plaintiffs' Counsel vigorously litigated Settlement Class Members' securities claims and achieved a substantial recovery on their behalf. As such, "[p]ublic policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee" here. *Jenkins*, 300 F.R.D. at 309; *see also* Ex. 7 ¶ 26.

### 2.    Lead Plaintiff Approves and Supports the Requested Fee

Lead Plaintiff is a sophisticated institutional investor that was actively involved in the prosecution and settlement of the Action. *See* ¶¶ 118, 122; Ex. 2 ¶¶ 3-6. As such, it has a sound basis for assessing the reasonableness of the requested fee award. After considering the extensive time and effort that Plaintiffs' Counsel dedicated to the Action, the significant risks of the litigation, and the considerable skill and expertise that Plaintiffs' Counsel brought to bear, Lead Plaintiff fully supports and approves of Lead Counsel's fee request. *See* Ex. 2 ¶¶ 8-10; ¶¶ 92, 118;

Point I.C.9, *supra*. This also supports approval of the requested fee. *See In re Waste Mgmt., Inc.*, 2002 WL 35644013, at \*25 (finding fee request "fair and reasonable" where lead plaintiff, who was "heavily involved in each facet of this litigation, including the settlement negotiations, fully support[ed] the fee requested"); *In re Bear Stearns Cos., Inc. Secs., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (where "sophisticated lead plaintiff possessing a large stake in the litigation . . . endorses the [fee] application following close supervision of the litigation, the court should give [this] great weight").

### 3.    The Settlement Class's Reaction to Date Supports the Requested Fee

As of February 21, 2024, a total of 30,582 Notice Packets had been mailed to potential Settlement Class Members and nominees informing them of Lead Counsel's intention to apply for attorneys' fees in an amount not to exceed 33 1/3% of the Settlement. *See* ¶¶ 53-54, 119; Ex. 1 ¶ 10; Ex. 1-A ¶¶ 5, 73. To date, no objections to this amount – which exceeds the 30% fee requested by Lead Counsel in this motion – have been received. *See* ¶¶ 58, 119; Ex. 1 ¶ 22.[17] This further supports approval of the requested fee. *See Go Frac,* 2017 WL 3699350, at \*2-3 (awarding 35% of the settlement where class members had notice of the requested fees and did not object); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("[T]he absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request.").

## II.    The Requested Litigation Expenses Are Reasonable and Were Necessary to Achieve the Benefit Obtained

Lead Counsel's fee application includes a request for reimbursement of Litigation Expenses that were reasonably incurred and necessary to the prosecution of the Action. These expenses are properly recoverable by counsel. *See Halliburton*, 2018 WL 1942227, at \*13.

---

[17] Lead Counsel will address any future objections in its reply papers to be filed with the Court on March 22, 2024.

22

Plaintiffs' Counsel incurred $204,323.08 in Litigation Expenses on behalf of the Settlement Class. *See* ¶¶ 113, 115-16; Exs. 3-B, 4-B, & 5-B. These Litigation Expenses are well-documented, based upon the books and records maintained by Plaintiffs' Counsel, and reflect the reasonable and necessary costs of prosecuting and settling the Action. They include, *inter alia*: (i) fees for experts on the FDA approval process, loss causation, and damages; (ii) fees and expenses incurred in connection with the mediation process; (iii) fees for a private investigator; (iv) work-related transportation, lodging, and meal costs; (v) online legal research and document hosting and management costs; and (vi) fees related to the filing and service of court documents. *See* ¶ 116; Exs. 3-B, 4-B, & 5-B.

The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of Litigation Expenses in an amount not to exceed $500,000. *See* ¶¶ 53, 119; Ex. 1-A ¶¶ 5, 73. The amount of Litigation Expenses for which Lead Counsel now seeks reimbursement, $204,323.08, is well below the amount listed in the Notice. To date, there have been no objections to the request. *See* ¶¶ 58, 119; Ex. 1 ¶ 22. Accordingly, the Court should approve payment of the requested Litigation Expenses. *See Go Frac*, 2017 WL 3699350, at *2-3 (awarding expenses in the absence of objections); *Dell*, 2020 WL 218518, at *1-2 (awarding expenses of $1,382,548.67 where "no objections to the fees or expenses were filed by Class Members").

**III.    Lead Plaintiff Should Be Awarded its Reasonable Costs under the PSLRA**

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Reimbursement of such costs is permitted because it "encourages participation of plaintiffs in the active supervision of their

23

counsel." *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000); *see Buettgen v. Harless*, No. 09 Civ. 00791, 2013 WL 12303143, at *14 (N.D. Tex. Nov. 13, 2013) ("[C]ourts routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation").

Here, Lead Counsel respectfully requests an award of $10,000 for Lead Plaintiff for the time and effort that its representatives expended on behalf of the Settlement Class. Such a request is fair and reasonable given Lead Plaintiff's active role in the litigation and settlement efforts. *See* ¶¶ 41-43, 118, 122; Ex. 2 ¶¶ 3-6. In furtherance of its duties to the Settlement Class, Lead Plaintiff's representatives: (i) communicated regularly with Lead Counsel regarding strategy and developments; (ii) reviewed and discussed pleadings and briefs filed in the Action; (iii) consulted with Lead Counsel during the Parties' protracted settlement negotiations; (iv) reviewed and discussed the Parties' mediation statements; (v) reviewed certain documents produced during the Parties' settlement negotiations; and (vi) traveled to New York City and Dallas to attend both mediation sessions with Mr. Melnick in person. *See* ¶¶ 41, 43, 122; Ex. 2 ¶¶ 4-5. These efforts required Lead Plaintiff's employees to dedicate considerable time and resources to the Action – time and resources they would have otherwise devoted to their regular duties. *See* Ex. 2 ¶ 12.

Given the substantial work performed by Lead Plaintiff, the amount requested is reasonable. It is also consistent with, or less than, awards granted in other cases. *See In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 14 Civ. 3428, 2019 WL 6043440, at *2 (S.D. Tex. Feb. 13, 2019) (awarding over $56,000 to lead plaintiffs); Order, *In re Conn's, Inc. Sec. Litig.*, No. 14 Civ. 00548 (S.D. Tex. Oct. 11, 2018), ECF No. 194 at 4 (awarding over $22,000 to class representative); *Halliburton*, 2018 WL 1942227, at *14 (awarding $100,000 to lead plaintiff); *Miller*, 2016 WL

11645372, at *1 (awarding $15,000 to lead plaintiff); *In re Arthrocare*, 2012 WL 12951371, at *6 (awarding $55,850 to lead plaintiff).

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court (i) award attorneys' fees in the amount of 30% of the Settlement Fund, plus interest incurred at the same rate as the Settlement Fund, (ii) approve payment of Plaintiffs' Counsel's Litigation Expenses in the amount of $204,323.08, plus interest incurred at the same rate as the Settlement Fund, and (iii) approve payment of the proposed award of $10,000 to Lead Plaintiff.

Dated: February 23, 2024

Respectfully Submitted,

**STECKLER WAYNE & LOVE PLLC**

*/s/ Bruce W. Steckler*
Bruce W. Steckler
State Bar No. 00785039
Austin P. Smith
State Bar No. 24102506
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: 972-387-4040
Facsimile: 972-387-4041
Email: bruce@swclaw.com
        austin@swclaw.com

*Local Counsel for Lead Plaintiff and the Proposed Settlement Class*

**KIRBY McINERNEY LLP**
Daniel Hume (admitted *pro hac vice*)
Meghan J. Summers (admitted *pro hac vice*)
Ira M. Press (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: 212-371-6600
Facsimile: 212-751-2540
Email: dhume@kmllp.com

25

msummers@kmllp.com
ipress@kmllp.com

*Lead Counsel for Lead Plaintiff and the
Proposed Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Additional Counsel for the Proposed
Settlement Class*

26

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that Plaintiffs' Counsel conferred with counsel for Defendants regarding the substance of the relief requested herein and counsel for Defendants indicated that Defendants are unopposed to the relief requested herein.

/s/  Bruce Steckler

Bruce Steckler

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/  Bruce Steckler*
Bruce Steckler