**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, *et al.*, <br><br>             Plaintiffs, <br><br>    v. <br><br> REATA PHARMACEUTICALS, INC., *et al.* <br><br>           Defendants. | Case No. 4:21-cv-00987-ALM LEAD <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MOTION FOR AUTHORIZATION
TO DISTRIBUTE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS
<u>AND SUPPORTING MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT.................................................................................... 1

II.    CLAIMS ADMINISTRATION PROCESS ................................................................. 3

      A.    Procedures and Review....................................................................................... 3

      B.    Disputed Claims.................................................................................................. 5

      C.    Late Claims and Final Cut-Off Date................................................................... 6

III.   DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND ..................................... 7

      A.    Distribution of Net Settlement Fund.................................................................... 7

      B.    Additional Distribution(s) of Net Settlement Fund ............................................. 8

IV.   FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR.................................... 9

V.    CONCLUSION.......................................................................................................... 9

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff UMC Benefit Board, Inc., US Equity Fund-P Series, a series of the Wespath Funds Trust, US Equity Index Fund-P Series, a series of the Wespath Funds Trust, Wespath Institutional Investments LLC, US Equity Fund-I Series, a series of the Wespath Funds Trust, and US Equity Index Fund-I Series, a series of the Wespath Funds Trust ("Lead Plaintiff"), on behalf of itself and the Settlement Class, hereby moves this Court for entry of the accompanying Proposed Order Approving Settlement Distribution to Authorized Claimants and Granting Related Relief (the "Distribution Order") in the above-captioned class action (the "Action"), consistent with the accompanying Declaration of Jessie Mahn Regarding Distribution Plan ("Mahn Declaration" or "Mahn Decl."), dated November 4, 2024, submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq").

## I.     PRELIMINARY STATEMENT

Pursuant to the Stipulation,[1] previously approved by the Court, Defendants have no interest in the relief sought by this motion. *See* Stipulation at ¶ 13 ("The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.").

Pursuant to the Stipulation, Defendants agreed to pay, or cause to be paid, $45,000,000 to settle the claims asserted in the Action. The Court granted preliminary approval of the Settlement by an order entered November 27, 2023 (ECF No. 76) and granted final approval of the Settlement by a Judgment dated March 29, 2024 (ECF No. 85).

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in the Stipulation and Agreement of Settlement, dated October 30, 2023 (ECF No. 74-2, the "Stipulation").

In accordance with the Preliminary Approval Order, Epiq mailed the Notice of: (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form," and together with the Notice, the "Notice Packet") to potential Settlement Class Members and to their brokers and other nominees. Mahn Decl. at ¶ 4 & Ex. A. As set forth in the accompanying Mahn Declaration, Epiq has mailed 47,734 Notice Packets to potential Settlement Class Members, brokers, and other nominees. *Id*. at ¶ 8. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit Claim Forms by no later than April 24, 2024. *Id*. at Ex. A.

Epiq established and continues to maintain the Settlement Website (www.ReataSecuritiesLitigation.com) dedicated to this Action, and a toll-free helpline, (877) 664-7398, to assist Settlement Class Members. *Id*. at ¶ 5. In accordance with Paragraph 7(d) of the Preliminary Approval Order, on January 8, 2024, Epiq caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*. *Id*. at ¶ 6.

The Court approved the proposed Plan of Allocation and the Effective Date of the Settlement has occurred. ECF No. 83; Stipulation at ¶ 31. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. Stipulation at ¶ 26.

If entered by the Court, the proposed Distribution Order will, among other things: (i) approve Epiq's administrative recommendations accepting and rejecting claims submitted herein; (ii) direct the distribution of the Net Settlement Fund to Settlement Class Members whose claims have been accepted as valid and approved by the Court; (iii) establish a bar date beyond which no new claims will be allowed, or claims will be adjusted; (iv) approve payment of the Claims

Administrator's fees and expenses in connection with the estimate to complete an initial distribution; and (v) authorize destruction of Claims Forms after the distribution is complete.

## II.   CLAIMS ADMINISTRATION PROCESS

Under the terms of the Stipulation and the Notice, all Settlement Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Claim Forms no later than April 24, 2024. ECF Nos. 74-2, 76 at 18. As set forth in the accompanying Mahn Declaration, Epiq has completed the processing of the 21,637 claims received as of November 1, 2024. Mahn Decl. at ¶ 7.

Epiq has prepared detailed reports of: (1) Authorized Claimants who submitted timely and eligible claims (Ex. E-1); (2) Authorized Claimants who submitted late, but otherwise eligible claims (Ex. E-2); and (3) all wholly rejected or ineligible claims (Ex. E-3). These reports are annexed as Exhibits E-1 through E-3 of the Mahn Declaration, respectively. *Id*. at ¶ 43. Based on these determinations, the Claims Administrator, in consultation with Lead Counsel, recommends that a distribution to the Authorized Claimants listed in Exhibits E-1 and E-2 be authorized. *Id*. at ¶ 44.

### A.   Procedures and Review

Epiq conducted an extensive review of all Claims Forms received. Among the 21,637 Claim Forms received and processed, 1,156 were paper or online Claims Forms submitted by mail or uploaded using the Settlement website. *Id*. at ¶¶ 13, 17. The paper Claim Forms were opened and scanned into an electronic database created for the Settlement. *Id*. at ¶ 13-14. Among the 21,637 Claim Forms received and processed, 20,481 were submitted to Epiq's Securities Team electronically, typically by or on behalf of institutional investors who may have had hundreds or thousands of transactions during the Settlement Class period. *Id*. at ¶¶ 19-20. The data from the Claim Forms was entered into a database created for the Settlement, evaluated, and processed

3

according to a complex coding procedure to identify the types and conditions of the Claim Forms. *Id*. at ¶¶ 19-23.

Many of the claims initially submitted were deficient or ineligible for one or more reasons, including not being signed, not being properly documented, or being otherwise deficient. *Id*. at ¶ 27. Epiq also encountered "non-conforming" claims, which, in general, require significantly more work than ordinary claims because of the information contained in or missing from the claim, or the manner in which the claim form was completed. *Id*. at ¶ 26. Non-conforming claims include, among other conditions, missing pages, no name or address, claim forms that are blank but submitted with documentation for Epiq to complete, and claim forms that are so materially deficient as to make what is being claimed unrecognizable. *Id*. If a paper or online claim was determined to be deficient or ineligible, a Notice of Deficient Claim Form Submission ("Deficiency Notice") was sent to the claimant describing the defect(s) in his, her, or its claim and what was necessary to cure any "curable" defect(s) in the claim. *Id.* at ¶ 28. The Deficiency Notice advised the claimant that the submission of the appropriate information and/or documentary evidence to complete the claim had to be sent within twenty (20) days from the date of the letter or the claim would be recommended for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. Claimants were also advised that they could request Court review of Epiq's administrative determinations if they wished to contest the rejection of their claims. *Id*. An example of the Deficiency Notice is attached as Exhibit B to the Mahn Declaration.

If an "Electronic Claim," *i.e.*, a large claim with many transactions submitted to Epiq's Securities Team specializing in the handling of such claims, was determined to be defective or ineligible, Epiq notified the filer of the deficiencies or conditions of ineligibility by emailing a Transaction Report, which listed the specific claims that were incomplete along with a list of the

specific portions of claims that were incorrect or incomplete so that the condition could be cured. *Id*. at ¶ 30. An example Transaction Report is attached to the Mahn Declaration as Exhibit C. The email advised the filer that any deficient transactions or claims that remain uncured would be rejected, and it informed the filer that it could, on behalf of the claimant, request that the Court review Epiq's administrative determination if it wished to contest the rejection. *Id*. at ¶ 30.

Epiq carefully reviewed claimants' and electronic filers' responses to the deficiency notifications and worked with them to resolve deficiencies where possible. *Id*. at ¶¶ 29, 31. The administration was also subject to Epiq's rigorous quality assurance review and screening for potentially fraudulent filers. *Id*. at ¶¶ 37-40.

As set forth in the Mahn Declaration, of the 21,637 claims received and processed by Epiq through November 1, 2024, Epiq has determined that 8,665 are acceptable in whole, 452 are acceptable in part, and that 12,520 should be wholly rejected because they are either ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Court-approved Plan of Allocation. *Id*. at ¶¶ 41-42 & Exs. E-1, E-2, E-3. Lead Plaintiff requests that the Court approve Epiq's administrative determinations accepting and rejecting claims as set forth in the Mahn Declaration.

### B.    Disputed Claims

Epiq carefully reviewed claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. at ¶¶ 29, 31. Filers were advised that they had the right to contest Epiq's administrative determinations of deficiencies or ineligibility within twenty (20) days from the date of notification. *Id*. at ¶ 32. Epiq received fourteen (14) requests for Court review of Epiq's administrative determinations. *Id*. at ¶ 33. In an attempt to resolve the disputes without the Court's intervention, Epiq attempted to contact all of the claimants requesting Court review in order to answer all of their questions, fully explain Epiq's determination

5

of the claims' status, and facilitate the submission of missing information or documents where applicable. *Id*. As a result of these efforts, eight (8) claims for which Court review was requested have either been cured or the request for Court review has been retracted. *Id*. Of the six (6) that have not been resolved or retracted, Epiq attempted to contact all claimants by telephone and email. *Id*. at ¶ 34. Each of these claimants either failed to respond or did not wish to retract their request. *Id*. The six (6) claimants were advised in writing of their rights and the reasons why their claims were denied. *Id*. Epiq recommends that the Court reject these six (6) disputed claims. *Id*. at ¶ 34 & Ex. D.

### C.     Late Claims and Final Cut-Off Date

The 21,637 claims processed by Epiq include 88 claims that were postmarked or received after the Court-approved claim filing deadline of April 24, 2024, of which 31 are, but for the late submission, otherwise eligible. *Id*. at ¶ 35 & Ex. E-2. While these 31 claims were late, they were received while the processing of timely claims was ongoing, and due to the amount of time needed to process the timely claims received, the processing of these late claims did not delay the completion of the administration process. *Id*. It is respectfully submitted that, when the equities are balanced, it would be unfair to prevent an otherwise eligible claimant from participating in the Net Settlement Fund solely because a claim was submitted after the Court-approved claim filing deadline, when it was submitted while timely claims were still being processed.

In order to facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no more claims will be accepted. *Id*. at ¶ 36. Accordingly,

Lead Plaintiff respectfully requests that the Court order that any new claims received after August 31, 2024, or adjusted after November 1, 2024, be barred. *Id*.[2]

### III.    DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND

Epiq recommends the following plan for the distribution of the Net Settlement Fund, which is set forth in full in the Mahn Declaration at paragraph 48 (the "Distribution Plan").

### A.    Distribution of Net Settlement Fund

Pursuant to the proposed Distribution Plan, Epiq will distribute the Net Settlement Fund, after deducting all payments approved by the Court, and after deducting payments of any Taxes, the cost of preparing appropriate tax returns, and any bank escrow fees, to Court-approved Authorized Claimants who would receive at least $10.00 based on their Recognized Claim, as calculated pursuant to the Court-approved Plan of Allocation (the "Initial Distribution"). *Id*. at ¶ 48(a)(iii). Pursuant to the Plan of Allocation, Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00.[3] *Id*. at ¶ 48(a)(ii).

In order to encourage Authorized Claimants to promptly deposit their payments, Lead Counsel and Epiq propose that the distribution checks bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id*. at ¶ 48(a)(iv). Authorized Claimants who do not negotiate their checks within the time allotted or on the conditions set forth in paragraph 48(a)(iv) of the Mahn Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated

---

[2] Should an adjustment be received before a distribution that results in a lower Recognized Claim amount, that adjustment will be made and the Recognized Claim amount will be reduced accordingly prior to a distribution to the claimant.

[3] Such "*de minimis*" amounts are regularly established in order to promote cost effective distributions and to avoid incurring costs that surpass the amounts paid to claimants.

7

checks will be available to be re-distributed to other Authorized Claimants in any subsequent distribution as described below. *Id*. at ¶ 48(a)(v).

**B.      Additional Distribution(s) of Net Settlement Fund**

After Epiq has completed the Initial Distribution and made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, but no earlier than six (6) months after the Initial Distribution, Epiq will, if Lead Counsel in consultation with Epiq determines that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). *Id*. at ¶ 48(b). In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution (*e.g.*, the funds for all void stale-dated checks), after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of a Second Distribution), and after payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants who cashed their Initial Distribution check and would receive at least $10.00 from such distribution based on their *pro-rata* share of the remaining funds. *Id*.

After completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise, and if cost-effective to do so, not less than six months after the Second Distribution is conducted, Epiq will conduct a further distribution of the Net Settlement Fund, in which all funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund, and after the payment of any Taxes, the costs of preparing appropriate tax returns, and escrow fees, will be distributed to Authorized Claimants who cashed their Second Distribution checks in an equitable and economic fashion. *Id*. ¶ 48(c).

8

Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective. *Id*. At that point, and as set forth in the Notice, the residual balance shall be contributed to non-sectarian, not-for-profit organization(s) to be recommended by Lead Counsel and approved by the Court. *Id*.; Notice at ¶ 71 (ECF No. 74-2).

## IV.   FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR

Pursuant to the Stipulation, and as explained to members of the Settlement Class in the Notice, the Settlement Fund is to be used to pay, among other things, fees and expenses incurred in connection with the administration and distribution of the Settlement. *See* Notice at ¶ 2; Stipulation at ¶ 9. Epiq agreed to be the Claims Administrator and to conduct the notice program and the claims administration process in exchange for payment of its fees and expenses, which have been paid pursuant to the Stipulation. Mahn Decl. at ¶ 46.

Epiq estimates that it will cost $57,237.00 to conduct the initial distribution of the Net Settlement Fund. *Id*. at ¶ 47 & Ex. F. Lead Plaintiff respectfully requests that this amount be withheld from the Initial Distribution to pay Epiq for the distribution costs. If less than this amount is incurred, Epiq shall refund the difference to the Net Settlement Fund. *Id*.

## V.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that its Motion for Authorization to Distribute Net Settlement Fund to Authorized Claimants should be granted in its entirety and that the Proposed Order Approving Settlement Distribution to Authorized Claimants and Granting Related Relief should be entered.

Dated: November 20, 2024

Respectfully Submitted,

**STECKLER WAYNE & LOVE PLLC**

*/s/ Bruce W. Steckler*
Bruce W. Steckler
State Bar No. 00785039
Austin P. Smith
State Bar No. 24102506
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: 972-387-4040
Facsimile: 972-387-4041
Email: bruce@swclaw.com
austin@swclaw.com

*Local Counsel for Lead Plaintiff and the Proposed Settlement Class*

**KIRBY McINERNEY LLP**
Daniel Hume (admitted *pro hac vice*)
Meghan J. Summers (admitted *pro hac vice*)
Ira M. Press (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: 212-371-6600
Facsimile: 212-751-2540
Email: dhume@kmllp.com
msummers@kmllp.com
ipress@kmllp.com

*Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Additional Counsel for the Proposed Settlement Class*

10

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

/s/  Bruce Steckler
Bruce Steckler
